UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EPHRAIM ATWAL, M.D.

    Plaintiff,

    v.

IFINEX INC., BFXNA INC., and BFXWW INC.,

    Defendants.

**COMPLAINT**

Civil Action No.   22-CV-00149

---

Ephraim Atwal, M.D., by and through his attorneys, Phillips Lytle LLP, for his complaint against iFinex Inc., BFXNA Inc., and BFXWW Inc., alleges as follows:

## THE PARTIES

1. Plaintiff Ephraim Atwal, M.D. ("Plaintiff" or "Dr. Atwal") is an individual who resides in the County of Erie, State of New York.

2. Defendant iFinex Inc. ("iFinex") is a corporation formed under the laws of the British Virgin Islands, and has its principal place of business at Suite 13/F, 1308 Bank of America Tower, 12 Harcourt Road, Central, Hong Kong, China.

3. Defendant BFXNA Inc. ("BFXNA") is a corporation formed under the laws of the British Virgin Islands, and has its principal place of business at Suite 13/F, 1308 Bank of America Tower, 12 Harcourt Road, Central, Hong Kong, China.

4. Defendant BFXWW Inc. ("BFXWW") is a corporation formed under the laws of the British Virgin Islands, and has its principal place of business at Suite 13/F, 1308 Bank of America Tower, 12 Harcourt Road, Central, Hong Kong, China.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this controversy based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

6. The amount in controversy exceeds the sum specified by 28 U.S.C. § 1332, exclusive of interest and costs.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because it is where a substantial part of the events or omissions giving rise to the claim occurred.

## BACKGROUND

**A.     Bitfinex**

8. iFinex wholly owns BFXNA and BFXWW.

9. iFinex, BFXNA, and BFXWW (collectively, "Defendants") operate Bitfinex, an online platform for exchanging and trading cryptocurrency.

**B.     EOS and the EOS Constitution**

10. EOS is a cryptocurrency that operates on blockchain technology. Blockchain is an immutable, distributed digital ledger of transactions. The EOS blockchain is public and transactions on the EOS blockchain are generally available at https://bloks.io.

11. At all relevant times, EOS transactions were governed by the EOS Constitution. A copy of the EOS Constitution is attached as **Exhibit A**.

12. Parties to the EOS Constitution are defined as Members. The EOS Constitution provides that "[t]his Constitution is a multi-party contract entered into by the Members by virtue of their use of this [EOS] blockchain." Ex. A.

13. Dr. Atwal and Defendants each became Members and entered into the EOS Constitution by their use of the EOS blockchain.

14. The EOS Constitution provides, in relevant part, that "Members grant the right of contract and of private property to each other, therefore no property shall change hands except with the consent of the owner, by a valid Arbitrator's order, or via community referendum." Ex. A, at Art. III.

15. The EOS Constitution further provides that "[a]ll rights and obligations under this Constitution are mutual and reciprocal and of equally significant value and cost to all parties." Ex. A, at Art. XVII.

16. In addition, the EOS Constitution provides that "[a]ll disputes arising out of or in connection with this Constitution shall be finally settled under the Rules of Dispute Resolution of the EOS Core Arbitration Forum by one or more arbitrators appointed in accordance with the said Rules." Ex. A, at Art. IX.

**C.     Dr. Atwal's EOS Account**

17. Beginning on or about June 26, 2017, Dr. Atwal maintained a private EOS cryptocurrency account (the "Account").

18. Dr. Atwal maintained private key credentials to access his Account.

19. On or about late August/early September 2018, Dr. Atwal's key credentials were obtained by a third party through a fraudulent application.

20. On or about late February to early March 2019, Dr. Atwal's misappropriated credentials were used to steal all the EOS cryptocurrency then contained in the Account (the "EOS").

21. Upon information and belief, approximately 2.09 million EOS (valued at approximately $12 million USD) existed in the Account at that time.

22. At no time did Dr. Atwal authorize or permit or knowingly provide his key credentials to any individual or third party.

23. At no time did Dr. Atwal authorize or permit the EOS to be transferred from the Account.

**D.  ECAF Arbitration and Orders**

24. On or about September 25, 2018, pursuant to Article IX of the EOS Constitution, Dr. Atwal submitted a claim with the EOS Core Arbitration Forum ("ECAF") to determine his ownership of the Account and seeking an emergency account freeze with respect to the Account.

25. On or about September 25, 2018, the ECAF Arbitrator assigned to the claim issued an emergency order for the EOS blockchain to restrict any transfers from the Account, and from several other accounts that had received transfers of the stolen EOS, while the ECAF Claim was pending (the "Blacklist Order"). The Blacklist Order was recorded on the EOS blockchain.

26. On or about February 22, 2019, EOS were transferred out of the Account without Dr. Atwal's authorization by an unauthorized third party notwithstanding the Blacklist Order.

27. On or after February 22, 2019, at least 158,000 EOS (at the time valued at more than $670,000 USD) were transferred from the Account, without Dr. Atwal's authorization, to one or more accounts on the Bitfinex exchange.

28. On or about February 28, 2019, the ECAF Arbitrator issued a second emergency order for the EOS blockchain to restrict any transfers from the Account, and from any other accounts that had received transfers of the stolen EOS—including any

accounts in receipt of the stolen EOS on or after February 22, 2019—while the ECAF Claim was pending (the "Second Blacklist Order").

29. On or about March 25, 2019, the ECAF Arbitrator issued a ruling on Dr. Atwal's ECAF claim regarding ownership of the Account (the "ECAF Ruling"), which was made publicly available. A copy of the ECAF Ruling is attached as **Exhibit B**.

30. The ECAF Ruling found that Dr. Atwal was the "true owner" of the Account, that transfers from Account were "unauthorized," and that Dr. Atwal's "rights under Article III of the EOS Constitution have been breached by the change of private keys [for the Account] without [Dr. Atwal's] consent."

31. The ECAF Ruling therefore held that the Account "should be returned" to Dr. Atwal and "the [EOS] funds removed from [the Account] should be returned to it from all accounts where they currently vest." Ex. B at 1.

32. The ECAF Ruling directed that "Exchanges should treat this ruling as proof of ownership and return any [EOS] funds originating from [the Account]." Ex. B at 5. It further directed that "[a]s members of the EOS ecosystem exchanges are also bound by the constitution and should respect the validity of this ruling." *Id*.

E.   **Bitfinex Fails to Freeze or Return Dr. Atwal's EOS**

33. Dr. Atwal informed Defendants that his stolen EOS were in one or more accounts on the Bitfinex exchange and demanded that Defendants freeze the stolen EOS, including by submitting a ticket on or about February 22, 2019 pursuant to Bitfinex's website instructions.

34. Defendants responded that the EOS had been frozen, but that law enforcement involvement was required to maintain a freeze on the EOS.

35. Defendants did not identify what EOS had been frozen or when the purported freeze of the EOS would expire.

36. Dr. Atwal diligently pursued law enforcement assistance and conducted an investigation to determine information necessary to identify relevant EOS transactions. The Federal Bureau of Investigation ("FBI") communicated with Defendants to demand that Bitfinex freeze the EOS and return the EOS to Dr. Atwal, including by providing Defendants with a copy of the ECAF Ruling on or about June 27, 2019.

37. Defendants failed to freeze the stolen EOS in response to Dr. Atwal's and/or the FBI's request, failed to adequately maintain a freeze of the stolen EOS, and/or failed to take other appropriate timely action with respect to the stolen EOS in response to requests from Dr. Atwal or the FBI.

38. In addition, due to Bitfinex's internal staffing issues and/or its failure to comply with its internal policies or procedures, Defendants did not timely respond to or take appropriate measures in response to the FBI's requests to freeze certain accounts on the Bitfinex exchange identified by the FBI as containing Dr. Atwal's stolen EOS, and the EOS was transferred out of those accounts before a freeze was put in place.

39. To date, neither Defendants nor Bitfinex have returned any of the stolen EOS to Dr. Atwal.

## FIRST CLAIM
### (Conversion)

40. Dr. Atwal realleges all prior allegations as if fully set forth herein.

41. Dr. Atwal owns the EOS that was transferred from the Account to the Bitfinex exchange or transacted on the Bitfinex exchange, as described above.

42. Defendants exercised control or dominion over Dr. Atwal's EOS.

43. Defendants' control or dominion over Dr. Atwal's EOS was unlawful because, among other reasons, Defendants were on notice that EOS transfers from the Account were made without authorization, with such notice provided by, among other sources, Dr. Atwal's communications with Defendants, the FBI's communications with Defendants, the Blacklist Order, the Second Blacklist Order, the ECAF Ruling, information available to Defendants on the EOS blockchain, and other publicly available information.

44. Defendants interfered with or deprived Dr. Atwal of the use, possession, or benefit of his EOS.

45. Defendants failed to return the EOS to Dr. Atwal.

46. As a result of Defendants' unlawful conversion, Dr. Atwal has been damaged in an amount to be determined at trial, but not less than $670,000.

## SECOND CLAIM
### (Trespass to Chattels)

47. Dr. Atwal realleges all prior allegations as if fully set forth herein.

48. Dr. Atwal owns the EOS that was transferred from the Account to the Bitfinex exchange or transacted on the Bitfinex exchange, as described above.

49. Defendants, intentionally and without authorization or justification, interfered with Dr. Atwal's use and enjoyment of his EOS.

50. As a result of Defendants' actions or omissions, Dr. Atwal has been damaged in an amount to be determined at trial, but not less than $670,000.

## THIRD CLAIM
### (Breach of Contract)

51. Dr. Atwal realleges all prior allegations as if fully set forth herein.

52. Pursuant to the EOS Constitution, Dr. Atwal and Defendants each agreed to be bound by the EOS Constitution by using and/or participating and/or facilitating transactions on the EOS blockchain. *See* Ex. A.

53. The EOS Constitution provides, in relevant part, that "no property shall change hands except with the consent of the owner, by a valid Arbitrator's order, or via community referendum," and "[a]ll rights and obligations under this Constitution are mutual and reciprocal." Ex. A, at Art. III and XVII.

54. Further, as a Member of the EOS Constitution, Bitfinex was obligated to comply with the ECAF Ruling.

55. Dr. Atwal complied with all of his obligations under the EOS Constitution.

56. Defendants breached their obligations to Dr. Atwal under the EOS Constitution, including their implied obligation of good faith and fair dealing, by among other actions or omissions, (a) failing to comply with the Blacklist Order or Second Blacklist Order prohibiting transactions of the EOS, (b) failing to comply with the ECAF Ruling requiring the EOS to be returned to Dr. Atwal, (c) failing to freeze the EOS and/or maintain a freeze of the EOS in response requests by Dr. Atwal and/or the FBI, and (d) failing to return the EOS to Dr. Atwal.

57. As a result of Defendants' breach, Dr. Atwal has suffered damages in an amount to be determined at trial, but not less than $670,000.

## FOURTH CLAIM
**(Unjust Enrichment)**

58. Dr. Atwal realleges all prior allegations as if fully set forth herein.

59. It is against equity and good conscience to allow Defendants to retain Dr. Atwal's EOS and/or the fees or other benefits received by Defendants from the transfer of Dr. Atwal's EOS on the Bitfinex exchange.

60. As a result of the foregoing, Defendants have been unjustly enriched at Dr. Atwal's expense in an amount to be determined at trial, but not less than $670,000.

## FIFTH CLAIM
### (New York General Business Law § 349)

61. Dr. Atwal realleges all prior allegations as if fully set forth herein.

62. Defendants informed Dr. Atwal that, per Bitfinex policy, Bitfinex would only maintain a freeze of his stolen EOS with law enforcement involvement.

63. This policy is deceptive and materially misleading because, among other reasons, (a) the requirement for a formal law enforcement request for Bitfinex to maintain a freeze of funds does not appear in the Terms and Conditions of the Bitfinex website, (b) the policy places an unreasonable burden on the consumer to engage law enforcement, particularly where the consumer has a binding arbitration decision establishing that he is the lawful owner of the funds, including because these transactions are complex and may require significant investigation by law enforcement, and any delay or gap in freezing funds is potentially harmful to the consumer due to the speed at which cryptocurrency can be removed from the Bitfinex exchange; and (c) contrary to Defendants' representation, Defendants failed to freeze or maintain a freeze of Dr. Atwal's EOS even after Dr. Atwal engaged law enforcement.

64. Upon information and belief, Defendants' deceptive conduct was consumer oriented because its policy applied to all requests from the public.

65. As a result of the foregoing, Defendants engaged in deceptive acts and practices in violation of N.Y. G.B.L. § 349.

66. As a result of the foregoing, Dr. Atwal was harmed in an amount to be determined at trial.

67. Defendant is entitled to actual and statutory damages under N.Y. G.B.L. § 349, including treble damages and reasonable attorneys' fees.

### SIXTH CLAIM
### (Negligence)

68. Dr. Atwal realleges all prior allegations as if fully set forth herein.

69. Defendants had a duty to exercise reasonable care with respect to Dr. Atwal's EOS on the Bitfinex exchange, including a duty to freeze the EOS pursuant to the EOS Constitution and after Defendants agreed and represented to Dr. Atwal and the FBI that the EOS could and would be frozen, and a duty to return the stolen EOS to Dr. Atwal.

70. Defendants breached this duty to Dr. Atwal by, among other actions or omissions, (a) failing to comply with the Blacklist Order or Second Blacklist Order prohibiting transactions of the EOS, (b) failing to comply with the ECAF Ruling requiring the EOS to be returned to Dr. Atwal, (c) failing to freeze the EOS and/or maintain a freeze of the EOS in response requests by Dr. Atwal and/or the FBI, (d) permitting the EOS to be transferred from accounts on the Bitfinex exchange identified by the FBI; and (e) failing to return the EOS to Dr. Atwal.

71. It was reasonably foreseeable that Defendants' failure to exercise reasonable care with respect to Dr. Atwal's EOS would result in damages to Dr. Atwal, including the transfer of the EOS from the Bitfinex exchange.

72. As a result of Defendants' negligence, Dr. Atwal has suffered damages in an amount to be determined at trial, but not less than $670,000.

## SEVENTH CLAIM
**(Permanent Injunction)**

73. Dr. Atwal realleges all prior allegations as if fully set forth herein.

74. Defendants continue to retain Dr. Atwal's stolen EOS and the fees and other benefits derived from the transfer of the stolen EOS on the Bitfinex exchange, and/or likely will come into possession of Dr. Atwal's stolen EOS upon the transfer of the stolen EOS to accounts on the Bitfinex exchange.

75. Defendants' continuing and/or imminent possession of Dr. Atwal's stolen EOS will cause Dr. Atwal irreparable harm, for which he does not have an adequate remedy at law, because the stolen EOS may be transferred off the Bitfinex exchange and potentially transferred out of the country.

76. Further, the balance of equities favor an injunction, because Defendants have an interest in preventing the transfer of stolen funds.

77. Accordingly, this Court should grant a permanent injunction against Defendants prohibiting and enjoining Defendants from transferring or approving the transfer of Dr. Atwal's EOS, whether the EOS is currently on the Bitfinex exchange or may be transferred to the Bitfinex exchange, to any other party.

WHEREFORE, Plaintiff Dr. Atwal hereby demands judgment against Defendants as follows:

A. On his First Claim, awarding Dr. Atwal damages in the amount to be determined at trial, but not less than $670,000;

B. On his Second Claim, awarding Dr. Atwal damages in the amount to be determined at trial, but not less than $670,000;

C. On his Third Claim, awarding Dr. Atwal damages in the amount to be determined at trial, but not less than $670,000;

D. On his Fourth Claim, awarding Dr. Atwal damages in the amount to be determined at trial, but not less than $670,000;

E. On his Fifth Claim, awarding Dr. Atwal actual and statutory damages under N.Y. G.B.L. § 349, including treble damages and reasonable attorneys' fees;

F. On his Sixth Claim, awarding Dr. Atwal damages in the amount to be determined at trial, but not less than $670,000;

G. On his Seventh Claim, granting a permanent injunction against Defendants prohibiting and enjoining Defendants from transferring or approving the transfer of Dr. Atwal's EOS, whether the EOS is currently on the Bitfinex exchange or may be transferred to the Bitfinex exchange, to any other party; and

H. Awarding such other relief as the Court deems just and proper.

Dated: Buffalo, New York
       February 22, 2022

PHILLIPS LYTLE LLP

By:   */s/ Anna Mercado Clark*
      Anna Mercado Clark
      Jeffrey D. Coren
Attorneys for Plaintiff
*Ephraim Atwal, M.D.*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
aclark@phillipslytle.com
jcoren@phillipslytle.com

Doc #10215861