UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Ephraim Atwal, M.D.,

Plaintiff,

-against-

iFinex Inc., BFXNA Inc., and BFXWW Inc.,

Defendants.

Case No. 22-CV-00149 (JLS)

**DEFENDANTS iFINEX INC., BFXNA INC., AND BFXWW INC.'S
OBJECTIONS TO THE HONORABLE MAGISTRATE JUDGE LESLIE G. FOSCHIO'S
<u>REPORT & RECOMMENDATION</u>**

Jason P. Gottlieb
Daniel C. Isaacs
Alexandra W. Wang
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendants*

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY .............................................. 5

    A.    Procedural History ................................................................................................ 5

    B.    Plaintiff Never Transacted Cryptocurrency On Bitfinex ............................... 5

    C.    Plaintiff's Private Account Was Hacked By A Third Party; Bitfinex Was Not A Party To The ECAF Matters ........................................................................................... 6

    D.    The Only Alleged Contact Between Plaintiff And Bitfinex Was Brief Online Communication ................................................................................................................ 7

    E.    The Report and Recommendation ................................................................... 8

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ....................................................................................................................... 9

    I.    The Magistrate Judge's Finding That The Court Has Specific Jurisdiction Over Defendants Was Erroneous Because It Was Based Solely On Incorrect "Facts" ..................... 9

        A.    There Cannot Be Jurisdiction Under CPLR 302(a)(1) ................................. 9

        B.    There Cannot Be Jurisdiction Under CPLR 302(a)(3)(ii) .......................... 13

        C.    The Magistrate Judge's Recommendation Would Violate Due Process ................... 16

    II.    The Magistrate Judge Erred In Recommending No Dismissal of Plaintiff's Negligence, Conversion, And Unjust Enrichment Claims ........................................................................ 17

        A.    The Magistrate Judge Relied On Incorrect "Facts" To Find That Defendants Assumed a Duty of Care To Plaintiff ................................................................................... 17

        B.    The Conversion Claim Should Be Dismissed Because Plaintiff Never Established A Superior Right of Possession ............................................................................ 21

        C.    The Unjust Enrichment Claim Fails Because Defendants Did Not Receive Benefits At Plaintiff's Expense ........................................................................................... 22

CONCLUSION .................................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
    828 F. Supp. 2d 557 (E.D.N.Y. 2011) ...................................................................11

*Aquiline Capital Partners LLC v. Finarch LLC*,
    861 F. Supp. 2d 378 (S.D.N.Y. 2012)....................................................................10

*Bartosiewicz v. Nelsen*,
    564 F. Supp. 3d 287 (W.D.N.Y. 2021) ..................................................................15

*Baskett v. Autonomous Research LLP*,
    2018 WL 4757962 (S.D.N.Y. Sept. 28, 2018).......................................................14

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997).....................................................................................16

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)......................................................................2, 9, 11, 12

*Beyond 79, LLC v. Express Gold Cash, Inc.*,
    No. 6:19-cv-06181 EAW, 2020 WL 7352545 (W.D.N.Y. Dec. 15, 2020) ...........23

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)...........................................................................................12

*Burrows Paper Corp. v. R.G. Eng'g, Inc.*,
    363 F. Supp. 2d 379 (N.D.N.Y. 2005) ..................................................................10

*Cordice v. Liat Airlines*,
    No. 14-cv-2924 (RRM)(LB), 2015 WL 5579868 (E.D.N.Y. Sept. 22, 2015).........14

*Golden Ring Int'l, Inc. v. Cullen*,
    No. 6:18-CV-1244, 2019 WL 4015638 (N.D.N.Y. Aug. 26, 2019) .......................15

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*,
    828 F. App'x 740 (2d Cir. 2020) .....................................................................13, 14

*M+J Savitt, Inc. v. Savitt*,
    No. 08 Civ. 8535(DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009)..................22

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
    51 F. Supp. 2d 486 (S.D.N.Y. 1999).....................................................................23

*Morgan Stanley & Co. v. JPMorgan Chase Bank, N.A.*,
  645 F. Supp. 2d 248 (S.D.N.Y. 2009) ......................................................................20

*Pieczenik v. Cambridge Antibody Tech. Grp.*,
  No. 03 Civ. 6336(SAS), 2004 WL 527045 (S.D.N.Y. Mar. 16, 2004) ...................10

*Pincione v. D'Alfonso*,
  506 F. App'x 22 (2d Cir. 2012) ....................................................................3, 14, 15

*RLP Ventures LLC v. All Hands Instruction NFP*,
  No. 18 Civ. 3988, 2019 WL 1316030 (S.D.N.Y. Mar. 21, 2019) ...................16, 17

*Rezende v. Citigroup Global Markets, Inc.*,
  2010 WL 4739952 (S.D.N.Y. Nov. 18, 2010) ........................................................22

*Schatzki v. Weiser Capital Mgmt., LLC*,
  995 F. Supp. 2d 251 (S.D.N.Y. 2014), *aff'd sub nom. BPP Wealth, Inc. v.*
  *Weiser Capital Mgmt., LLC*, 623 F. App'x 7 (2d Cir. 2015) ................................23

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ....................................................................16

*Tavarez v. Lelakis*,
  143 F.3d 744 (2d Cir. 1998) ............................................................................19, 20

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
  729 F.3d 215 (2d Cir. 2013) ............................................................................14, 16

*Virgin Enters. Ltd. v. Virgin Eyes LAC*,
  No. 08 CV 8564(LAP), 2009 WL 3241529 (S.D.N.Y. Sept. 30, 2009) ................11

*Zaretsky v. Gemological Inst. of Am., Inc.*,
  No. 14 Civ. 1113(SAS), 2014 WL 1678990 (S.D.N.Y. Apr. 28, 2014) ................21

*Zito v. United Airlines, Inc.*,
  523 F. Supp. 3d 377 (W.D.N.Y. 2021) ...................................................................14

## STATE CASES

*Castiglione v. Vill. of Ellenville*,
  291 A.D.2d 769 (3d Dep't 2002), *appeal denied*, 98 N.Y.2d 604 (2002) .........19, 20

*Georgia Malone & Co., Inc. v. Rieder*,
  19 N.Y.3d 511 (2012) ............................................................................................22

*Heard v. City of N.Y.*,
  82 N.Y.2d 66 (1993) ......................................................................................19, 20

*Kelso v. Wall St. Funding*,
   94 A.D.3d 1186 (3d Dep't 2012) ................................................................19, 20, 21

*Malpeli v. Yenna*,
   81 A.D.3d 607 (2d Dep't 2011) ................................................................19

*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370 (2014) ................................................................12

## STATUTES & RULES

28 U.S.C. 636(b)(1)(C) ................................................................8

CPLR 302 ................................................................16

CPLR 302(3)(i) ................................................................13

CPLR 302(a)(1) ................................................................ *passim*

CPLR 302(a)(2) ................................................................16

CPLR 302(a)(3) ................................................................15

CPLR 302(a)(3)(ii) ................................................................ *passim*

Fed. R. Civ. P. 72(b) ................................................................1

Fed. R. Civ. P. 72(b)(3) ................................................................8

Rule 12(b)(2) ................................................................5

Rule 12(b)(6) ................................................................5

Defendants iFinex Inc., BFXNA Inc., and BFXWW Inc. respectfully object, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 72, to the following findings of Magistrate Judge Leslie G. Foschio's Report and Recommendation, dated October 19, 2022 (ECF 27; the "R&R"):

1. The finding that the Court has specific jurisdiction over Defendants pursuant to CPLR 302(a)(1) and CPLR 302(a)(3)(ii) (*see* R&R at 12-19); and

2. The finding that Plaintiff plausibly stated claims for negligence, conversion, and unjust enrichment (*see* R&R at 26-30, 32-34, and 38-40, respectively).

Respectfully, this Court should reject those portions of the R&R, and dismiss the Complaint in its entirety with prejudice.

## PRELIMINARY STATEMENT

The Magistrate Judge's recommendation that this Court has personal jurisdiction over the Defendants is erroneous because it is premised on an incorrect "fact" that is not alleged in the Complaint, not argued by Plaintiff, and not true: the notion that Plaintiff was a customer of Bitfinex who held or traded cryptocurrency on the Bitfinex platform.  Specifically, the Magistrate Judge found that Plaintiff transacted business with Defendants, based solely on the unalleged (and untrue) premises that: (i) Plaintiff "accessed, from New York, the Bitfinex platform on which Plaintiff conducted transactions involving the EOS cryptocurrency"; (ii) that Plaintiff "use[d] the Bitfinex website to trade in EOS cryptocurrency"; (iii) that Plaintiff "purchas[ed] and maintain[ed] his EOS in an account on the Bitfinex platform"; and (iv) that Defendants never "challeng[ed] the use of Bitfinex by Plaintiff, a New Yorker [sic] resident."  *See* R&R at 15-16.

Plaintiff never alleged or argued any of those "facts."  Plaintiff never alleged he accessed the Bitfinex platform, never alleged he conducted transactions on Bitfinex, never alleged he used the Bitfinex website to trade cryptocurrency, and never alleged he purchased cryptocurrency on a

Bitfinex account. In fact, Plaintiff specifically and candidly admitted in his opposition to Defendants' motion to dismiss that "his claims do not relate to his use of a Bitfinex account" (Opp. at 11). And the uncontroverted affidavit submitted by Defendants establishes that Plaintiff was not ever a customer or user of Bitfinex (Hoegner Decl. ¶ 9). Put simply, the Magistrate Judge relied on a set of "facts" that Plaintiff never alleged, argued, or even suggested was true.

Unfortunately, the Magistrate Judge relied on *only* that incorrect notion – that Plaintiff was a customer of Bitfinex who held or traded cryptocurrency on the Bitfinex platform – to find specific personal jurisdiction over Defendants, which are foreign entities that do not do business in the United States, let alone in New York or with Plaintiff. The Magistrate Judge's reliance on incorrect and un-asserted information to reach a finding of personal jurisdiction is critically adverse and highly prejudicial to Defendants. Adopting these findings would violate Defendants' due process, since they would subject Defendants to jurisdiction based on unalleged and untrue information, notwithstanding that Defendants have no "minimum contacts" with New York.

The facts that were *actually* alleged do not form a sufficient basis to exercise specific jurisdiction over Defendants. CPLR 302(a)(1) requires both that Defendants purposefully transacted business in New York, and that Plaintiff's claims arise from such business transactions. The Complaint is devoid of allegations that Defendants transacted business in New York, since Defendants specifically do not allow U.S. customers to have Bitfinex accounts. The *only* allegation connecting Defendants to New York is Plaintiff's brief email exchange with Bitfinex – initiated by Plaintiff himself. The Second Circuit has squarely held that such web-based communications alone are not business transactions, and are insufficient to confer jurisdiction. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007).

The Magistrate Judge also erred in finding that the Court had long-arm jurisdiction under CPLR 302(a)(3)(ii), which confers jurisdiction over a defendant who commits a tortious act outside New York causing injury within the state, if they expect or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.  Plaintiff merely alleges that he suffered economic damages arising from foreign activity while he happened to reside in New York.  This is not a legally sufficient predicate for jurisdiction under CPLR 302(a)(3)(ii).  *See Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012).  The Magistrate Judge also wholly failed to address the requirement that Defendants must "expect their act to have consequences in" New York.  *Id.* (cleaned up).  Here, there are no allegations suggesting that Defendants should have had such an expectation, given that Defendants have no presence in New York, Plaintiff was not ever a customer of or transacted on Bitfinex, and Defendants *barred* New York customers from Bitfinex.  Hence, there is no long-arm jurisdiction.

Because the Court lacks personal jurisdiction over Defendants, the Complaint should be dismissed with prejudice.

The Court's analysis can and should end there.  Nevertheless, the Magistrate Judge also erred in declining to dismiss Plaintiff's negligence, conversion, and unjust enrichment claims largely based on the same incorrect set of "facts."

First, the Magistrate Judge found that Defendants assumed a duty of care to Plaintiff based on the incorrect notion that Plaintiff's EOS was stolen from an account that Plaintiff maintained with Bitfinex.  That premise, dispositive to the Magistrate Judge's finding, was not alleged in the Complaint, and is not true – Plaintiff's EOS was stolen from a private, non-Bitfinex account.  *See* Compl. ¶¶ 18-19.  The Complaint is otherwise devoid of allegations that plausibly allege Bitfinex knowingly assumed any duty to Plaintiff, given that the only contact between Bitfinex and Plaintiff

(who was not a customer of Bitfinex) was his February 22, 2019 email asking Bitfinex to freeze a third-party's account without providing any support for his request (Compl. ¶ 33), and Bitfinex's replies – both on February 22, 2019 and again months later and to which Plaintiff did not respond – warning Plaintiff that law enforcement involvement was needed to maintain the freeze. *See* Atwal Decl., Ex. 1.  Plaintiff's negligence claim should be dismissed with prejudice.

Second, the Magistrate Judge's finding that Plaintiff stated a claim for conversion was based on the incorrect presumption that Plaintiff's EOS was stolen from a Bitfinex account, rather than the private account in which he actually maintained his EOS.  *See* Compl. ¶¶ 18-19.  A conversion claim must be dismissed when the ownership claim over the property is disputed.  Here, the Complaint only alleges – at best – that Plaintiff presented an unsubstantiated request to Bitfinex to freeze assets held in a third-party's account, which is legally deficient.  *See* Compl. ¶ 33; Atwal Decl., Ex. 1.

Finally, the Magistrate Judge erred in declining to dismiss the unjust enrichment claim.  As a matter of law, there can be no unjust enrichment where a plaintiff does not allege that the defendant received a benefit *at the plaintiff's expense*.  Here, Plaintiff does not allege that he was entitled to any of the supposed fees that Bitfinex received, which is fatal to his claim.

For these reasons, as well as those set forth below, the Court should reject the Magistrate Judge's recommendations that (1) the Court has specific jurisdiction over Defendants pursuant to CPLR 302(a)(1) or CPLR 302(a)(3)(ii); and (2) Plaintiff plausibly stated claims for negligence, conversion, and unjust enrichment, and should dismiss the Complaint in its entirety with prejudice.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  Procedural History

Plaintiff filed the Complaint (ECF 1) on February 22, 2022.  Defendants moved to dismiss the complaint pursuant to Rule 12(b)(2), for lack of personal jurisdiction, and Rule 12(b)(6), for failure to state a claim (the "Motion"; ECF 15-17, 26).  In support of the Motion, Defendants submitted the Declaration of Stuart Hoegner ("Hoegner Decl."; ECF 16).  In opposition to the Motion (ECF 23; the "Opp."), Plaintiff submitted the Declaration of Dr. Ephraim Atwal ("Atwal Decl."; ECF 25) and the Declaration of Anna Mercardo Clark (ECF 24).

### B.  Plaintiff Never Transacted Cryptocurrency On Bitfinex

Plaintiff *never* transacted cryptocurrency (or anything else) with or on Bitfinex. Specifically, Plaintiff alleges that he never had an account with Bitfinex, never engaged in any cryptocurrency or other transactions with Bitfinex, and that the EOS stolen from his *private* account was transferred to Bitfinex by a third-party (and *not* by Plaintiff).  In his own words:

> –  "Beginning on or about June 26, 2017, Dr. Atwal maintained a *private* EOS cryptocurrency account (the "Account").  Dr. Atwal maintained *private* key credentials to access his Account."  Compl. ¶¶ 17-18 (emphasis added).

> –   "On or about February 22, 2019, EOS were transferred out of the Account without Dr. Atwal's authorization by an unauthorized third party notwithstanding the Blacklist Order.  On or after February 22, 2019, at least 158,000 EOS (at the time valued at more than $670,000 USD) were transferred from the Account, without Dr. Atwal's authorization, *to one or more accounts on the Bitfinex exchange*."  Compl. ¶¶ 26-27 (emphasis added).

In Plaintiff's declaration, he averred that he only accessed the "Bitfinex *website*" on February 22, 2019 to send a request to Bitfinex.  *See* Atwal Decl. ¶ 4 (emphasis added).  In his opposition, he further emphasized that his "*claims do not relate to his use of a Bitfinex account*." *See* Opp. (ECF 23) at 11 (emphasis added).

Plaintiff was also not a customer of Bitfinex. Bitfinex does not even allow U.S. customers to have accounts. *See* Hoegner Decl. at ¶¶ 8-9. Bitfinex's Terms of Service has banned all U.S. individual customers from transacting on Bitfinex since August 2017 (well before Plaintiff's first alleged contact with Bitfinex), and all U.S. entity and/or corporate customers from transacting on Bitfinex since August 2018. *See* Hoegner Decl. at ¶¶ 10-13. These same prohibitions on U.S. users remain in force today. *See id.* at ¶ 12.

### C. Plaintiff's Private Account Was Hacked By A Third Party; Bitfinex Was Not A Party To The ECAF Matters

Plaintiff alleges that his private cryptocurrency account was hacked by a third party in late August or early September 2018. Compl. ¶ 19. The hacked account was Plaintiff's personal one; he had no account with Bitfinex. *See* Compl. ¶¶ 17-19; Opp. at 11. On September 25, 2018, Plaintiff submitted a claim to the EOS Core Arbitration Forum ("ECAF") regarding his stolen credentials. Compl. ¶ 24. The same day, ECAF issued the first Blacklist Order, purportedly prohibiting the transfer of the stolen EOS on the EOS blockchain. Compl. ¶ 25. On February 22, 2019, an unnamed third party hacked Plaintiff's EOS Account (the "Account") using stolen credentials. Compl. ¶¶ 19-20. That third-party allegedly transferred the stolen EOS from Plaintiff's private account to an account on Bitfinex. Compl. ¶¶ 26-27.

On February 28, 2019, ECAF issued a Second Blacklist Order. Compl. ¶ 28. On March 25, 2019, the ECAF Arbitration panel issued the ECAF Ruling, purporting to find that Plaintiff was the owner of the EOS. Compl. ¶ 28. There are only two parties to the arbitration, a Mr. E.S.A. (Plaintiff) and a Mr. B.J. – Bitfinex was not part of the arbitration. Compl. ¶¶ 24, 29; ECF 1-2.

**D. The Only Alleged Contact Between Plaintiff And Bitfinex Was Brief Online Communication**

The *only* alleged contact between Plaintiff and Bitfinex was a brief email exchange initiated by Plaintiff. Plaintiff alleges that on February 22, 2019, he sent an email to Bitfinex in which he "informed Defendants that his stolen EOS were in one or more accounts on the Bitfinex exchange and demanded that Defendants freeze the stolen EOS." *See* Compl. ¶ 33. Bitfinex replied to Plaintiff "the EOS had been frozen, but that law enforcement involvement was required to maintain a freeze on the EOS." Compl. ¶ 34. Plaintiff does not allege that he submitted *any* documentary backup to Defendants in support of his request. Comp. ¶¶ 33-34. Nor does Plaintiff allege that he ever again communicated with Defendants. *See generally* Compl. Plaintiff's sworn declaration submitted in opposition to the Motion is consonant, averring that he only accessed the Bitfinex website – not any accounts, but the general website – on February 22, 2019 to send a request to Bitfinex. *See* Atwal Decl. ¶ 4.

Plaintiff submitted that email as an exhibit to his declaration. *See* Atwal Decl., Ex. 1 (ECF 25-1). In the exchange, Bitfinex replied to Plaintiff on April 21, 2019 stating, "it's been over 30 days and we wanted to follow up if there has been any progress with your law enforcement request?? Funds unfortunately can't be held without a legal basis and informal victim reports are not sufficient for us to keep funds frozen without law enforcement involvement." *See id.* Plaintiff never responded to that message. *See id.* Four months after Plaintiff first emailed Bitfinex, the FBI contacted Bitfinex, and attached a copy of the ECAF Ruling from March 25, 2019 – the first time that Plaintiff alleges anyone made Bitfinex aware of the ECAF proceeding. Compl. ¶ 26; ECF 24-4.

### E.  The Report and Recommendation

On October 19, 2022, the Magistrate Judge issued his R&R.  First, the Magistrate Judge recommended that Defendants are not subject to the general jurisdiction of the Court (which Defendants do not challenge), but nevertheless recommended that they are subject to specific jurisdiction under CPLR 302(a)(1), for transacting business in New York, and 302(a)(3)(ii), for engaging in tortious conduct outside New York that causes injury in New York.  The Magistrate Judge erred in recommending that Defendants are subject to specific jurisdiction because he relied solely on the incorrect "fact" that Plaintiff transacted cryptocurrency on or with Bitfinex, which was not alleged in the Complaint, and is false.  *See* R&R at 12-19.

Second, the Magistrate Judge recommended dismissal of Plaintiff's breach of contract, trespass to chattel, GBL 349, and permanent injunction claims (which Defendants do not challenge), but declined to recommend dismissal of Plaintiff's negligence, conversion, and unjust enrichment claims.  As set forth below, the Magistrate Judge's recommendations are in error for those three causes of action because he relied on the same incorrect "facts," and misapplied the law.  *See* R&R at 26-30, 32-34, and 38-40.

## <u>LEGAL STANDARD</u>

Upon review of a Report and Recommendation, the District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  On a dispositive motion, such as Defendants' motion to dismiss, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*; *see also* Fed. R. Civ. P. 72(b)(3).

## ARGUMENT

I. **The Magistrate Judge's Finding That The Court Has Specific Jurisdiction Over Defendants Was Erroneous Because It Was Based Solely On Incorrect "Facts"**

### A. There Cannot Be Jurisdiction Under CPLR 302(a)(1)

The Magistrate Judge erred in recommending that the Court has specific jurisdiction over Defendants pursuant to CPLR 302(a)(1). Under that rule, the exercise of jurisdiction is only permitted when (1) the defendant transacts any business in New York, and, (2) the plaintiff's cause of action arises from such a business transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation and quotations omitted).

    *i.*   *The Magistrate Judge's Finding That Plaintiff Transacted Business With Bitfinex Was Based On Incorrect "Facts"*

The Magistrate Judge found that Plaintiff transacted business with Defendants based *solely* on the unalleged (and untrue) premises that: (i) Plaintiff "accessed, from New York, the Bitfinex platform on which Plaintiff conducted transactions involving the EOS cryptocurrency"; (ii) that Plaintiff "use[d] the Bitfinex website to trade in EOS cryptocurrency,"; (iii) that Plaintiff's EOS was held in an account on the "Bitfinex platform"; (iv) that Plaintiff "purchas[ed] and maintain[ed] his EOS in an account on the Bitfinex platform"; and (v) that Defendants never "challeng[ed] the use of Bitfinex by Plaintiff, a New Yorker [sic] resident." *See* R&R at 15-16.[1]

These "facts" are incorrect. Not a single one was alleged in the Complaint or contained in the motion papers. To the contrary, Plaintiff never alleged that he accessed the Bitfinex platform, never had an account with Bitfinex, and never conducted transactions involving EOS (or any other

---

[1]     The Magistrate Judge also made reference to the allegation that Plaintiff and Defendants were "Members of the EOS Constitution, a multi-party contract, through their use of the EOS blockchain." To the extent the Magistrate Judge's finding of specific jurisdiction was at all premised on this allegation, it was also in error because the Magistrate Judge separately recommended dismissal of Plaintiff's breach of contract claim premised on the same alleged "multi-party contract," finding that no such contract was sufficiently plead. *See* R&R at 26.

cryptocurrency) with Bitfinex.  Plaintiff's EOS was stolen from a private account, and not from

Bitfinex, and Plaintiff never purchased or maintained any EOS on Bitfinex.  *See* Compl. ¶¶ 17-18,

26-27.  Plaintiff explicitly concedes these points, stating candidly that his "*claims do not relate to

his use of a Bitfinex account.*"  *See* Opp. at 11.  The Magistrate Judge's misapprehension of these

facts was the sole basis for his finding that Defendants transacted business in New York, hence his

recommendation should be rejected.

There is otherwise no factual basis to find that Defendants transacted business in New

York.  To establish that a non-domiciliary is transacting business in New York, a plaintiff must

show that the defendant "purposefully avail[ed itself] of the privilege of conducting activities within

New York," and the defendant's "direct and personal involvement on his own initiative project[ed]

himself' into New York to engage in a 'sustained and substantial transaction of business." *Aquiline

Capital Partners LLC v. Finarch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (cleaned up);

*Pieczenik v. Cambridge Antibody Tech. Grp.*, No. 03 Civ. 6336(SAS), 2004 WL 527045, at *4

(S.D.N.Y. Mar. 16, 2004); *see also Burrows Paper Corp. v. R.G. Eng'g, Inc.*, 363 F. Supp. 2d 379,

385 (N.D.N.Y. 2005).

Here, the Complaint is devoid of allegations that Defendants transacted business in New

York after 2018.  Nor could the Complaint contain any, since Plaintiff did not have an account with

Bitfinex, did not transact cryptocurrency with or on Bitfinex, and Defendants have not allowed U.S.

customers, such as Plaintiff, to have Bitfinex accounts since 2018.  *See* Hoegner Decl. ¶ 10.

Plaintiff does not allege otherwise.  The *only* supposed fact connecting Defendants to New York is

Plaintiff's allegation that on February 22, 2019, he sent a message to Bitfinex in which he "informed

Defendants that his stolen EOS were in one or more accounts on the Bitfinex exchange and

demanded that Defendants freeze the stolen EOS," and Bitfinex's email correspondence in reply. *See* Compl. ¶¶ 33-34.

Plaintiff's brief correspondence with Defendants, initiated by Plaintiff, was not a business transaction in New York.  The Second Circuit's decision in *Best Van Lines* is binding authority. 490 F.3d 239 (2d Cir. 2007).  There, the Court held that an out-of-state defendant, operating a nationally-available website, did not transact business in the state because it did not purposefully available itself of activity in New York, and that a website's accessibility by New Yorkers is not sufficient.  490 F.3d at 241, 253-54.  *Best Van Lines*'s progeny confirms that specific jurisdiction requires actual "business transactions occurring in the state." *See, e.g., A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 566 (E.D.N.Y. 2011).  A website that allows users to contact Defendants is insufficient to confer jurisdiction, absent any transactions of business. *See A.W.L.I.*, 828 F. Supp. 2d at 569.  Otherwise, "every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York." *Id.* at 569 (quotation omitted); *Virgin Enters. Ltd. v. Virgin Eyes LAC*, No. 08-cv-8564 (LAP), 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) (activity should be "supplemented by business transactions occurring in the state").

Here, Defendants do not do business in New York, and have not since 2018.  *Plaintiff does not allege otherwise.*  The only alleged contact between Plaintiff and Defendants was their email communication in 2019.  *See* Compl. ¶¶ 33-34.  *Best Van Lines* and its progeny establish that such circumstances do not, as a matter of law, suffice as a business transaction in New York.  The Magistrate Judge's finding to the contrary should be rejected.

     *ii.*    *The Magistrate Judge's Finding That Plaintiff's Claim Arose From Defendants' Business Transactions Is Equally Erroneous*

The Magistrate Judge also found that Plaintiff's causes of action arose from Defendants' "transaction between Defendants and Plaintiff in New York" (R&R at 17) solely because:

> Defendants' failure to prevent Plaintiff from using the Bitfinex platform to obtain and subsequently store EOS in an account on Bitfinex, as well as to fail to prevent the unauthorized transfers of the EOS from the Account to other accounts on the platform establish the alleged claims are arguably connected to transactions that occurred on the Bitfinex platform initiated by Plaintiff, located in New York.

None of these "facts" were alleged in the Complaint or contained in the motion papers. Rather, (i) Plaintiff never "us[ed] the Bitfinex platform to obtain and subsequently store EOS in an account on Bitfinex"; (ii) Plaintiff's EOS was not maintained by Plaintiff "on an account on Bitfinex"; and (iii) Plaintiff never initiated any transactions on the Bitfinex platform. *See* Compl. ¶¶ 17-18, 26-27; Opp. at 11 (Plaintiff's "claims do not arise from the use of a Bitfinex account").

Plaintiff's claims do not – because they cannot – arise from any of Defendants' business transactions in New York. This is because Defendants did not permit any U.S. customers, including any New York customers (such as Plaintiff) after 2018. *See Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (nondomiciliary "must purposefully avail itself of the privilege of conducting activities within New York"); *see also Best Van Lines*, 490 F.3d at 246. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State," and any exercise of jurisdiction based on such unconnected activities runs afoul of Due Process. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017); *see infra* § C. The Magistrate Judge's misapprehension of these non-alleged "facts" was the sole basis for his finding that Plaintiff's claims were arguably connected to some business transaction by Defendants in New York, and hence his finding should be rejected.

## B.  There Cannot Be Jurisdiction Under CPLR 302(a)(3)(ii)

The Magistrate Judge's finding of jurisdiction under CPLR 302(a)(3)(ii) was wrongly premised on the same incorrect "facts."  CPLR 302(a)(3)(ii) confers jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state … if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  CPLR 302(a)(3)(ii); *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 743 (2d Cir. 2020) (citations omitted).[2]

The Magistrate Judge found that "Plaintiff accessed the Bitfinex website from New York and used the website to conduct transactions with Defendant from New York."  *See* R&R at 17.  The Magistrate Judge also found that Plaintiff suffered injury in New York because he allegedly suffered financial loss there.  *See id*.  These findings are based on "facts" that were not alleged, are not correct (as Plaintiff concedes), and contrary to law.

First, the Magistrate Judge expressly relied on the notion that "Plaintiff accessed the Bitfinex website from New York and used the website to conduct transactions with Defendant from New York."  R&R at 17.  This fact was not alleged in the Complaint.  It is also false, since (i) Plaintiff did not use the Bitfinex platform to obtain and subsequently store EOS in an account on Bitfinex; (ii) Plaintiff's EOS was not maintained by Plaintiff in a Bitfinex account; and (iii) Plaintiff never conducted transactions on the Bitfinex platform.  *See* Compl. ¶¶ 17-18, 26-27; Opp. at 11 (Plaintiff's "claims do not arise from the use of a Bitfinex account"); Hoegner Decl.

---

[2]     For the reasons set forth in Section I(B), there can also be no specific jurisdiction under CPLR 302(3)(i), which requires that the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state."  CPLR 302(3)(i).

The Magistrate Judge's finding is irreconcilable with the Complaint.  *See, e.g.*, Compl.; Opp. at 11 (Plaintiff stating that his "claims do not relate to his use of a Bitfinex account.").

Second, the Magistrate Judge erred in finding that Plaintiff suffered injury in New York. Interpreting CPLR 302(a)(3)(ii), the Second Circuit has held that the relevant inquiry regarding the location of the injury is "where the critical events associated with the dispute took place," *not where the injury rests.  JCorps Int'l, Inc.*, 828 F. App'x at 744 (quotation omitted); *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013).  It is also well-settled in this Circuit that tort "injury occurs at the place of the original event which caused it" and the original event is "distinguished from the final economic injury and felt consequences."  *Pincione*, 506 F. App'x at 26 (cleaned up); *Zito v. United Airlines, Inc.*, 523 F. Supp. 3d 377 (W.D.N.Y. 2021); *Cordice v. Liat Airlines*, No. 14-cv-2924 (RRM) (LB), 2015 WL 5579868 (E.D.N.Y. Sept. 22, 2015).  The Magistrate Judge's finding, focused solely on the location of the Plaintiff, and not where the "critical events" took place (abroad) runs afoul of this binding precedent.

In the R&R, the Magistrate Judge cited to only a single case, *Baskett v. Autonomous Research LLP*, for the proposition that "injury within the state includes financial loss."  No. 17-CV-9237 (VSB), 2018 WL 4757962, at *10 (S.D.N.Y. Sept. 28, 2018).  *Baskett* is materially distinguishable, and does not support the finding of injury here in New York.  There, the plaintiff was a New York-based employee of a foreign defendant, hired by the defendant to open its New York office.  She sued the defendant for discrimination.  The court found that the plaintiff suffered the injury – the alleged discrimination – in New York, where she was intentionally located by the defendant within the scope of her employment.

Here, in contrast, Plaintiff allegedly suffered economic damages arising from foreign activity while he happened to reside in New York.  Plaintiff's allegations do not suffice for specific

jurisdiction, since his claims are "out-of-state commercial torts with purely economic damages within New York." *Bartosiewicz v. Nelsen*, 564 F. Supp. 3d 287, 299 (W.D.N.Y. 2021). That Plaintiff may have merely suffered an economic injury in New York is insufficient under the statute. *See Pincione*, 506 F. App'x at 26 ("[T]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.") (quotation omitted).

<u>Third</u>, the Magistrate Judge did not address the requirement that a defendant must "reasonably expect its actions to have consequences in New York." *See* R&R at 17 (failing to address the "expectations" requirement); *cf. Baskett.* 2018 WL 4757962, at *10 (foreign defendant hired plaintiff to work in New York). Here, Plaintiff does not plausibly allege that Defendants should have reasonably expected their actions to have consequences in New York, given that Defendants have no presence in New York; Plaintiff was not ever a customer of Defendants and never transacted on Bitfinex; and Defendants barred U.S. (including New York) customers from accessing the Bitfinex platform and conducting transactions on Bitfinex. *See* Hoegner Decl. ¶¶ 3-7. Plaintiff alleges operational failures that occurred abroad, which is insufficient. *See Golden Ring Int'l, Inc. v. Cullen*, No. 6:18-CV-1244, 2019 WL 4015638, at *8 (N.D.N.Y. Aug. 26, 2019) (no jurisdiction where the alleged misconduct took place outside of New York). The Magistrate Judge's failure to consider that Defendants had no reasonable expectation that its alleged actions could have consequences in New York – a requirement to impose jurisdiction – was erroneous.

In sum, the only allegation upon which Plaintiff premises his jurisdictional arguments is *his own* residence in New York. That allegation does not suffice: "[i]t is well-settled that residence or domicile of the injured party within New York is not sufficient predicate for jurisdiction" under

CPLR 302(a)(3)(ii). *Troma Entm't, Inc.*, 729 F.3d at 218 ("[W]e have rejected as insufficient to support the exercise of jurisdiction over a defendant allegations of remote or consequential injuries … only because the plaintiff is domiciled or doing business [in New York].") (citations and quotations omitted). Because Plaintiff cannot establish injury in New York or that Defendants expected or reasonably should have expected their alleged acts to have consequences in New York, there is no basis for specific jurisdiction under CPLR 302(a)(3)(ii), and the R&R's finding should be rejected.[3]

## C. The Magistrate Judge's Recommendation Would Violate Due Process

The Magistrate Judge found that the exercise of specific jurisdiction over Defendants pursuant to CPLR 302(a)(1) and CPLR 302(a)(3)(ii) comported with due process because under New York's long-arm statute, due process is satisfied so long as the requirements of CPLR 302 are met. *See* R&R at 18-19.

The Magistrate Judge's finding is erroneous because Defendants' contacts (or lack thereof) with New York do not satisfy CPLR 302. *See supra* at Section I(A)-(B). As set forth above, the Magistrate Judge's findings of specific jurisdiction were premised on incorrect "facts" and a misapplication of law. Because there is no specific jurisdiction over Defendants pursuant to CPLR 302, nor any other "minimal contacts" between Defendants and New York, exercising jurisdiction over Defendants would violate due process. *See, e.g., RLP Ventures LLC v. All Hands Instruction NFP*, No. 18 Civ. 3988, 2019 WL 1316030, at *4 (S.D.N.Y. Mar. 21, 2019) ("[E]xtending personal

---

[3]     Although the Magistrate Judge did not address it, we note that there is also no personal jurisdiction pursuant to CPLR 302(a)(2). That rule permits personal jurisdiction only when an alleged tort is physically committed within the state of New York. *See Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 730 (S.D.N.Y. 2010) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997)). Plaintiff does not and cannot allege that Defendants, none of which are in New York, committed any acts, much less tortious acts, within the state. *See generally* Compl.; Hoegner Decl. ¶¶ 3-8. All of the alleged acts of Defendants pleaded by Plaintiff took place internationally. *See Tamam*, 677 F. Supp. 2d at 730 (finding no jurisdiction because there were no allegations that Defendants ever set foot on domestic soil). Further, because CPLR 302(a)(2) requires the physical presence of Defendants within the State, specific jurisdiction will not lie even if any assets within Defendants' control passed through the state. *See id.*

jurisdiction based on essentially *de minimis* contributions made from a website accessible in any jurisdiction, would raise serious due process concerns.") (quotation omitted).

## II.   The Magistrate Judge Erred In Recommending No Dismissal of Plaintiff's <u>Negligence, Conversion, And Unjust Enrichment Claims</u>

### A. The Magistrate Judge Relied On Incorrect "Facts" To Find That Defendants Assumed a Duty of Care To Plaintiff

In declining to recommend dismissal of the negligence claim, the Magistrate Judge found that Defendants assumed a duty of care to Plaintiff by "operating the online platform on which the cryptocurrency transaction took place, with such transactions recorded on the EOS blockchain, [and thus] Defendants were in the best position to monitor transactions of EOS involving Plaintiff's Account." R&R at 30. The Magistrate Judge also found Defendants breached that duty by "fail[ing] to stop transactions in EOS from Plaintiff's Account in violation of the Blacklist Orders and the ECAF Ruling." *See id.* The Magistrate Judge's finding that Defendants voluntarily assumed a duty to Plaintiff should be rejected because it is based on incorrect facts and does not comport with applicable law.

### i.   *Plaintiff's EOS Was Stolen From His Private Account*

The Magistrate Judge's finding that Defendants assumed a duty to Plaintiff was premised on two incorrect "facts", neither of which was alleged.

<u>First,</u> the Magistrate Judge premised his finding on the misapprehension that Plaintiff's EOS was stolen from an account that Plaintiff maintained with Bitfinex. *See* R&R at 30 (finding that Defendants "operat[ed] the online platform on which the cryptocurrency transaction took place" and that "Defendants were in the best position to monitor transactions of EOS involving Plaintiff's Account"). To the contrary, Plaintiff never used the Bitfinex platform, never had an account with Bitfinex, never conducted transactions involving EOS (or any other cryptocurrency)

with or on Bitfinex, Plaintiff's EOS was stolen from a *private* account, and not from Bitfinex, and Plaintiff never purchased or maintained any EOS on Bitfinex.  *See* Compl. ¶¶ 17-19; *see also* Opp. at 11 (Plaintiff's "claims do not relate to his use of a Bitfinex account").

The Magistrate Judge also relied on Paragraph 28 of the Complaint for its finding that that the EOS blockchain was "hosted by Defendants' Bitfinex platform."  *See* R&R at 29.  That purported fact, however, is *not* alleged in Paragraph 28 of the Complaint (or anywhere else in the Complaint).  Plaintiff does not ever allege that Bitfinex controlled the EOS blockchain, or that Bitfinex had any control over the theft of Plaintiff's EOS from Plaintiff's own, private account.  *See generally* Compl. ¶¶ 17-19.

Second, the Magistrate Judge also premised his finding on the incorrect "fact" that Bitfinex was aware of the "Blacklist Orders and the ECAF Ruling."  *See* R&R at 30.  But Plaintiff never alleges that he provided Bitfinex with notice of the Blacklist Orders and ECAF Ruling.  Nor are there any other allegations in the Complaint that Bitfinex was ever put on notice of them before lifting the freeze.  *See* Compl. ¶ 36 (alleging that Defendants first received a copy of the ECAF Ruling on or about June 27, 2019, four months after Plaintiff contacted Bitfinex).

Finally, the Magistrate Judge appears to have found that Bitfinex was bound by the ECAF Ruling.  *See* R&R at 29.  This finding is unsupported by the Complaint.  There are no allegations that Bitfinex was a party to the ECAF arbitration proceeding.  Rather, the only two parties to the arbitration proceeding were Plaintiff "Mr. E.S.A.," as claimant, and a "Mr. B.J.," as respondent.  *See* Compl. ¶ 29; ECF 1-2.  The FBI did finally allegedly share the ECAF Ruling with Bitfinex on June 27, 2019, four months *after* Plaintiff requested the freeze.  Compl. ¶ 26; ECF 24-4.  At this point, however, the freeze had already been lifted.  *See* Atwal Decl., Ex. 1 (ECF 25-1) (April 2019 email from Bitfinex warning Plaintiff that the freeze would expire).

       *ii.*    *Bitfinex Did Not Otherwise Voluntarily Assume Any Duty To Plaintiff*

The Complaint is devoid of allegations that Bitfinex knowingly assumed a duty to Plaintiff. The *only* contact between Plaintiff and Bitfinex occurred on February 22, 2019, when Plaintiff – who was *not a customer of Bitfinex* – sent an electronic request to Bitfinex asking it to freeze a *third party's* account, without providing substantiation.  Compl. ¶ 33; Atwal Decl., Ex. 1 (ECF 25-1).  Bitfinex responded, temporarily freezing the funds, but made clear that the funds would only stay frozen "if we receive a formal request from law enforcement."  Compl. ¶ 34; Atwal Decl., Ex. 1 (ECF 25-1).  In April 2019, after radio silence from Plaintiff, Bitfinex told Plaintiff that "[f]unds unfortunately can't be held without a legal basis and informal victim reports are not sufficient for us to keep funds frozen without law enforcement involvement."  *See* Atwal Decl., Ex. 1 (ECF 25-1).  Plaintiff never responded.  *See* Compl. ¶ 36.

These fact are irreconcilable with a finding that Bitfinex voluntarily assumed a duty to Plaintiff.  To plead a duty arising from a voluntary act, a plaintiff must show that the defendant's actions placed the plaintiff in a *worse* position than if the defendant had refrained from acting at all, that such duty was not terminated, and that the plaintiff's reliance was justified.  *See, e.g.*, *Heard v. City of N.Y.*, 82 N.Y.2d 66, 72 (1993); *Castiglione v. Vill. of Ellenville*, 291 A.D.2d 769, 770 (3d Dep't 2002), *appeal denied*, 98 N.Y.2d 604 (2002); *Malpeli v. Yenna*, 81 A.D.3d 607, 629 (2d Dep't 2011).  In other words, "assumed duties arise only where (1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking."  *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998).  "[A]ssumed duties are not of infinite duration; generally, they may be abandoned at will."  *Id.*

Critically, a response to a "request for assistance" is not in and of itself the assumption of a duty.  *See Kelso v. Wall St. Funding*, 94 A.D.3d 1186, 1188 (3d Dep't 2012).  Courts regularly

affirm the dismissal of negligence claims based on supposed assumed duties that fail to satisfy all of these elements. *Castiglione*, 291 A.D.2d at 770-71 (dismissing negligence claim where defendant's voluntary action did not increase the risk to the plaintiff); *Tavarez*, 143 F.3d at 748 (dismissing negligence claim where defendant terminated any assumed duty); *Kelso*, 94 A.D.3d at 1188 (dismissing negligence claim because defendant's statement that they would assist plaintiff to resolve a property title issue did not assume a duty to resolve the issue).

In finding a duty here, the Magistrate Judge relied only on a single case, *Morgan Stanley & Co. v. JPMorgan Chase Bank, N.A.*, 645 F. Supp. 2d 248 (S.D.N.Y. 2009). *See* R&R at 28. That case is inapposite. There, Chase Bank offered the use of lockboxes to secure rent checks at a Chase Bank facility. A rogue employee stole the rent checks. The Court found that Chase Bank assumed a duty to lockbox users because, but for Chase's provision of the lockboxes, the users would never been exposed to the theft. 645 F. Supp. 2d at 257. The key distinction was that Chase Bank's actions placed the user in a worse position than if Chase Bank had not acted at all. *See Heard*, 82 N.Y.2d at 72.

Here, in contrast, Plaintiff was not a customer of Bitfinex. *See* Compl. ¶¶ 17-18; Opp. at 11; Hoegner Decl. ¶ 9. Nor does Plaintiff allege that Bitfinex voluntarily assumed custody of Plaintiff's assets. Rather, the exact opposite is alleged – that a third-party transferred the EOS to Bitfinex's platform without Bitfinex's knowledge or permission after Plaintiff's *private* account was hacked.

Plaintiff also does not – because he cannot – allege that Bitfinex's response to Plaintiff's request somehow increased the risk that Plaintiff would be harmed. *See Heard*, 82 N.Y.2d at 72. Had Bitfinex done nothing at all, the same result would have befallen him. *Cf. Morgan Stanley*, 645 F. Supp. 2d at 257. Finally, even if Defendants had assumed a duty, Bitfinex terminated any

duty when it warned Plaintiff that law enforcement was needed to maintain the freeze, and Plaintiff did not respond.  *See* Atwal Decl., Ex. 1 (ECF 25-1); *Kelso*, 94 A.D.3d at 1188.  Accordingly, Plaintiff's negligence claim should be dismissed with prejudice.

### B. The Conversion Claim Should Be Dismissed Because Plaintiff Never Established A Superior Right of Possession

The Magistrate Judge declined to recommend dismissal of the conversion claim on the ground that Plaintiff had established a superior claim to possession of the EOS with the Blacklist Orders and the ECAF Ruling.  R&R at 33-34.  This was an error because the Complaint does not plausibly allege that Plaintiff demonstrated to Bitfinex that he had a superior right of possession in the EOS.  Namely, Plaintiff does not allege that Bitfinex was ever on notice of the Blacklist Orders or bound by the ECAF Ruling, so as to establish Plaintiff's superior right of possession. *See supra* at II.A (Plaintiff did not allege that he ever provided notice of the Blacklist Orders or ECAF Ruling to Bitfinex).  Rather, Plaintiff pleaded *only* that he sent an unsubstantiated request to Bitfinex stating the EOS was his, and then utterly failed to respond to Bitfinex's email for more information.  *See* Atwal Decl., Ex. 1 (ECF 25-1).

Sustaining a conversion claim where there was a disputed claim of ownership is erroneous. It is well-settled that where an ownership claim over property is disputed, a claim for conversion will not lie against the property-holder that waits for a dispute to be clarified, since no party can establish a superior right of possession.  In *Zaretsky v. Gemological Inst. of Am., Inc.*, No. 14 Civ. 1113(SAS), 2014 WL 1678990 (S.D.N.Y. Apr. 28, 2014), the defendant diamond appraiser possessed a diamond purportedly "owned" by plaintiff.  During the course of the appraisal, the defendant learned that the diamond may have once been stolen.  The District Court dismissed a conversion claim because defendant was "holding the diamond until the disputed ownership can be resolved."  *Id.*, at *5 ("These allegations do not permit an inference that [defendant] has acted

unreasonably, or wrongfully refused to return the diamond.").  Similarly, in *Rezende v. Citigroup Global Markets, Inc.*, the District Court dismissed a conversion claim against defendant Citigroup, since it was rightfully in possession of funds that were deposited into its accounts, but was notified of competing claims.  No. 09 Civ. 9392 (HB), 2010 WL 4739952, at *4 (S.D.N.Y. Nov. 18, 2010).

Here, like in those cases, Plaintiff alleges nothing more than an unsubstantiated claim to Bitfinex that the EOS held in a third-party's account belonged to him.  *See* Atwal Decl., Ex. 1 (ECF 25-1); Compl. ¶ 33.  At best, Bitfinex was in a position of having received competing ownership claims.  As a matter of law, the conversion claim should be dismissed with prejudice.

### C. The Unjust Enrichment Claim Fails Because Defendants Did Not Receive Benefits At Plaintiff's Expense

The Magistrate Judge declined to dismiss Plaintiff's unjust enrichment seeking the recovery of transaction fees that Bitfinex supposedly earned from the EOS.  *See* R&R at 40.  This finding was erroneous because a plaintiff may only recover for unjust enrichment when a defendant was enriched at the plaintiff's expense, which Plaintiff does not allege.

To state a claim for unjust enrichment, a plaintiff must plead that "(1) the other party was enriched, (2) *at that party's expense*, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (emphasis added, quotation omitted).

Here, any transaction fees paid by third parties to Bitfinex cannot underpin Plaintiff's unjust enrichment claim, because Plaintiff does not plead that he himself would have ever received those transaction fees but for Bitfinex's actions.  To state a claim, "[t]he plaintiff must have bestowed the benefit on the defendant."  *M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535(DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009).  "A plaintiff's allegation that a defendant received benefits, standing alone, is insufficient to establish a cause of action to recover damages

for unjust enrichment." *Schatzki v. Weiser Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014), *aff'd sub nom. BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC*, 623 F. App'x 7 (2d Cir. 2015); *see also Beyond 79, LLC v. Express Gold Cash, Inc.*, No. 6:19-cv-06181 EAW, 2020 WL 7352545, at *7 (W.D.N.Y. Dec. 15, 2020) (collecting cases that dismiss unjust enrichment claims where the benefit was not at plaintiff's expense); *Mina Inv. Holdings Ltd. v. Lefkowitz*, 51 F. Supp. 2d 486, 490 (S.D.N.Y. 1999) (dismissing claim where, *inter alia*, defendant's gain was not at plaintiff's expense).

Plaintiff does not allege that he would have received any supposed transaction fees that Bitfinex received, or that Defendants otherwise received any benefit at his expense. Awarding Plaintiff "transaction fees" to which he was never entitled would hence be inequitable as a matter of law. The unjust enrichment claim should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should reject the Magistrate Judge's recommendations that (1) the Court has specific jurisdiction over Defendants pursuant to CPLR 302(a)(1) or CPLR 302(a)(3)(ii) (*see* R&R at 12-19); and (2) Plaintiff plausibly stated claims for negligence, conversion, and unjust enrichment (*see* R&R at 26-30, 32-34, and 38-40, respectively), and should dismiss the Complaint in its entirety.

Date:   November 11, 2022

Respectfully submitted,

MORRISON COHEN LLP

 /s/ Jason P. Gottlieb
Jason Gottlieb (jgottlieb@morrisoncohen.com)
Daniel Isaacs (disaacs@morrisoncohen.com)
Alexandra Wang (awang@morrisoncohen.com)
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
*Attorneys for Defendants*

## LOCAL RULE 72(c) ATTORNEY CERTIFICATION

Pursuant to Local Rule 72(c), the undersigned, counsel for Defendants iFinex Inc., BFXNA Inc., and BFXWW Inc., hereby certifies that Defendants' Objections to the October 19, 2022 Report and Recommendation do not raise new factual or legal arguments.

Dated: November 11, 2022

MORRISON COHEN LLP

*/s/ Jason P. Gottlieb*

Jason Gottlieb
Daniel Isaacs
Alexandra Wang
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
jgottlieb@morrisoncohen.com
disaacs@morrisoncohen.com
awang@morrisoncohen.com
*Attorneys for Defendants*