UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

EPHRAIM ATWAL, M.D.

                Plaintiff,

          v.

IFINEX INC., BFXNA INC., and BFXWW INC.,

                Defendants.

———————————————————————————

Civil Action No.
22-CV-00149-JLS-LGF


**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS
TO THE OCTOBER 19, 2022 REPORT AND RECOMMENDATION**


Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Plaintiff
*Ephraim Atwal, M.D.*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400

Anna Mercado Clark
Jeffrey D. Coren
– Of Counsel –

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES..........................................................................................ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 3

     A.      EOS and the EOS Constitution ................................................... 3

     B.      Dr. Atwal's EOS Account ........................................................... 4

     C.      The Bitfinex Defendants............................................................. 4

     D.      ECAF Arbitration and Orders ..................................................... 5

     E.      Bitfinex Fails to Freeze or Return Dr. Atwal's EOS .................. 7

     F.      The Report and Recommendation................................................ 7

ARGUMENT ............................................................................................................. 9

POINT I        THE REPORT & RECOMMENDATION CORRECTLY
                FOUND THAT THE COURT HAS PERSONAL
                JURISDICTION OVER DEFENDANTS ................................... 9

POINT II       THE REPORT & RECOMMENDATION CORRECTLY
                FOUND  THAT THE COMPLAINT SUFFICIENTLY
                ALLEGES CLAIMS FOR  NEGLIGENCE, CONVERSION,
                AND UNJUST ENRICHMENT ..............................................18

POINT III     DEFENDANTS DO NOT CHALLENGE THE
                RECOMMENDATION  THAT DR. ATWAL'S
                BREACH OF CONTRACT CLAIM SHOULD BE
                DISMISSED WITHOUT PREJUDICE AND WITH
                LEAVE TO REPLEAD ...........................................................25

CONCLUSION ........................................................................................................25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines,*
828 F. Supp. 2d 557 (E.D.N.Y. 2011) ........................................................13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................18

*Baskett v. Automomous Research LLP,*
2018 WL 4757962 (S.D.N.Y. Sept. 18, 2018) ...........................................15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................18

*Best Van Lines Inc. v. Walker,*
490 F. 3d 239 (2d Cir. 2007) .....................................................................13

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ...................................................................................17

*Chloe v. Queen Bee of Beverly Hills, LLC,*
616 F.3d 158 (2d Cir. 2010) ......................................................................17

*Citigroup Inc. v. City Holding Co.,*
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...........................10, 11, 12, 13, 14, 15

*Cordice v. LIAT Airlines,*
No. 14-CV-2924, 2015 WL 5579868 (E.D.N.Y. Sept. 22, 2015) .................15

*DiStefano v. Carozzi N. Am., Inc.,*
286 F.3d 81 (2d Cir. 2001) .......................................................................... 9

*Hargrave v. Oki Nursery, Inc.,*
636 F.2d 897 (2d Cir. 1980) ......................................................................16

*James v. iFinex Inc.,*
185 A.D.3d 22 (1st Dep't 2020) ..........................................5, 11, 12, 14, 17

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.,*
828 F. App'x 740 (2d Cir. 2020) ...............................................................15

*Kelso v. Wall St. Funding,*
94 A.D.3d 1186 (3d Dep't 2012) ................................................................22

*Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*,
   861 F. Supp. 2d 120 (W.D.N.Y. 2012) .......................................................................18

*Lawson v. Full Tilt Poker Ltd.*,
   930 F. Supp. 2d 476 (S.D.N.Y. 2013)........................................................................23

*Leon v. Shmukler*,
   992 F. Supp. 2d 179 (E.D.N.Y. 2014) .......................................................................18

*MacDermid, Inc. v. Deiter*,
   702 F.3d 725 (2d Cir. 2012) .....................................................................................17

*Morgan Stanley & Co.. v. JP Morgan Chase Bank, N.A.*,
   645 F. Supp. 2d 248 (S.D.N.Y. 2009).............................................................18, 19, 20

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*,
   890 F.3d 60 (2d Cir. 2018) ................................................................................. 24, 25

*Pariente v. Scott Meredith Literary Agency, Inc.*,
   No. 90 Civ. 0547, 1991 WL 19857 (S.D.N.Y. Feb. 11, 1991).....................................16

*Pincione v. D'Alfonso*,
   506 F. App'x 22 (2d Cir. 2012) .................................................................................16

*Rezende v. Citigroup Glob. Markets, Inc.*,
   No. 09 Civ. 9392, 2010 WL 4739952 (S.D.N.Y. Nov. 18, 2010) .................................24

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*,
   156 F. Supp. 3d 348 (E.D.N.Y. 2016) .......................................................................15

*Tavarez v. Lelakis*,
   143 F.3d 744 (2d Cir. 1998) ................................................................................ 21, 22

*Taylor Devices, Inc. v. Walbridge Aldinger Co.*,
   538 F. Supp. 2d 560 (W.D.N.Y. 2008)........................................................................10

*In re Tether & Bitfinex Crypto Asset Litig.*,
   No. 1:19-cv-09236, 2021 WL 4452181 (S.D.N.Y. Oct. 6, 2019) ................................... 5

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir.) .............................................................................................23

*Troma Ent., Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013) .....................................................................................15

*Virgin Enterprises Ltd. v. Virgin Eyes LAC*,
   No. 08-CV-8564, 2009 WL 3241529 (S.D.N.Y. Sept. 30, 2009) ..................................13

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) ..........................................................................................17

*Zaretsky v. Gemological Inst. of Am., Inc.,*
    No. 14 Civ. 1113, 2014 WL 1678990 (S.D.N.Y. Apr. 28, 2014) ...................................24

*Zito v. United Airlines, Inc.,*
    523 F. Supp. 3d 377 (W.D.N.Y. 2021) .....................................................................15

**Statutes**

CPLR § 302 ...................................................................................... 10, 12, 14, 15

CPLR § 302(a)(1) ................................................................................. 8, 10, 11

CPLR § 302(a)(3)(ii) ............................................................................. 2, 8, 9, 16

New York General Business Law Article 23-A ................................................. 5

**Other Authorities**

Local Rule 72(b) ...................................................................................25

Rule 12(b)(2) .................................................................................. 9, 18, 25

Rule 12(b)(6) .......................................................................................25

## PRELIMINARY STATEMENT

The Court should adopt Magistrate Judge Leslie G. Foschio's well-reasoned Report and Recommendation, Dkt. 27 ("R&R") and (a) deny Defendants' motion to dismiss on the basis of personal jurisdiction, (b) deny Defendants' motion to dismiss Dr. Atwal's claims for negligence, conversion, and unjust enrichment, and (c) grant Dr. Atwal leave to replead his claim for breach of contract. Defendants claim in their objections that the R&R misapprehended certain facts, but Defendants overstate the significance of these alleged erroneous facts, which are not material to the Magistrate Judge's recommendations, and Defendants do not challenge numerous other factual findings that, standing alone, sufficiently support the recommendations.

Following the theft of Dr. Atwal's EOS cryptocurrency account credentials, Dr. Atwal obtained emergency orders to freeze transactions involving the stolen EOS from the EOS Core Arbitration Forum ("ECAF"), the arbitral body with jurisdiction over EOS ownership, which emergency orders were published to EOS users including Defendants. In violation of those emergency orders, however, Dr. Atwal's EOS was transferred to various other accounts without his authorization, including by using Bitfinex—a cryptocurrency exchange operated by Defendants—and stored in Bitfinex accounts. Upon learning of Bitfinex's involvement, Dr. Atwal accessed the Bitfinex website from New York and used the website in New York to promptly notify Defendants that the EOS should be frozen. Defendants assured Dr. Atwal that the EOS had been frozen upon receipt of his request, but claimed that law enforcement involvement was required to maintain the freeze. Relying on those representations and instructions, Dr. Atwal diligently pursued law enforcement assistance, resulting in a Federal Bureau of Investigation ("FBI") request from a Special

Agent in New York to Defendants to freeze and return the stolen EOS. The FBI also provided Defendants with a copy of the final ECAF Ruling confirming that Dr. Atwal was the owner of the stolen EOS. Defendants, however, failed to timely freeze the Bitfinex accounts, adequately maintain a freeze, or return the stolen EOS to Dr. Atwal.

The R&R correctly held that the Court has jurisdiction over Defendants based on their transaction of business in New York. Defendants operated the interactive Bitfinex website, which was accessible in New York, and communicated and transacted business with Dr. Atwal in New York, including by purportedly freezing Dr. Atwal's stolen EOS in Bitfinex accounts. The R&R therefore rejected Defendants' argument, now repeated in their objections, that Dr. Atwal's "access of the Bitfinex website was not a business transaction, but merely a communication," holding that Defendants' "fail[ure] to ensure that no further transactions of [Dr. Atwal's] EOS currency occurred . . . allege[s] more than a mere communication." R&R at 15. Further, the R&R expressly did not rely on whether Dr. Atwal was a Bitfinex customer or traded on Bitfinex. *Id.* The R&R also correctly held that, alternatively, the Court has jurisdiction under CPLR 302(a)(3)(ii) because Defendants' tortious acts outside of New York caused injury in New York. *Id.* at 17-18.

The R&R also correctly found that the Complaint sufficiently alleges claims for negligence, conversion, and unjust enrichment.

Defendants voluntarily assumed a duty of care to Dr. Atwal by taking the affirmative step of purportedly freezing some Bitfinex accounts, and Defendants were in the best and only position to prevent the loss because they operated Bitfinex and maintained administrative control over those accounts. The Complaint therefore sufficiently alleges a claim for negligence because Defendants breached their duty to Dr. Atwal by, among other

actions, failing to comply with the Blacklist Orders and the ECAF Ruling by permitting transactions of the EOS and failing to return the EOS to Dr. Atwal.

The Complaint also sufficiently alleges conversion based on Defendants' failure to return the stolen EOS in Bitfinex accounts to Dr. Atwal following requests by Dr. Atwal and the FBI.  Contrary to Defendants' objection, this is not a situation of contested ownership, because Defendants were provided with the ECAF Ruling conclusively establishing that Dr. Atwal owned the EOS at issue, and the FBI acknowledged Dr. Atwal as the victim and rightful owner of the stolen EOS.

In addition, the Complaint sufficiently alleges unjust enrichment.  Although Defendants argue that they did not receive any benefit at Dr. Atwal's expense when they failed to return his EOS, because Bitfinex transaction fees were paid by third parties, New York law provides the such benefits may be directly or indirectly conveyed.

Finally, Defendants do not object to the recommendation that Dr. Atwal be granted leave to replead his breach of contract claim.

## FACTUAL BACKGROUND

### A.    EOS and the EOS Constitution

EOS is a cryptocurrency that operates on blockchain technology.  Compl. ¶ 10.[1]  At all relevant times, EOS transactions were governed by the EOS Constitution.  *Id.* ¶ 11 and Ex. A ("EOS Const.").  The EOS Constitution provides that it "is a multi-party contract entered into by the Members by virtue of their use of this [EOS] blockchain."  *Id.* ¶ 12.  Specifically, every EOS transaction during the relevant period included a reference or "hash" to the EOS Constitution as part of the user's signature on the publicly-available

---

[1]      As used herein, "Compl." refers to the Complaint (Dkt. 1) and "Obj." refers to Defendants' Objections to the R&R dated November 11, 2022 (Dkt. 30).

blockchain, and binds the signer to the contract.  Dkt. 24-1 at 7.  Dr. Atwal and Defendants each became members of and agreed to be bound by the EOS Constitution by engaging in transactions and/or facilitating transactions involving EOS.  Compl. ¶ 13, 52.

The EOS Constitution provides, in relevant part, that "no property shall change hands except with the consent of the owner, by a valid Arbitrator's order, or via community referendum," and "[a]ll rights and obligations under this Constitution are mutual and reciprocal."  EOS Const., Art. III and XVII.  It further provides that all disputes "arising out of or in connection with this Constitution shall be finally settled" by arbitration under the EOS Core Arbitration Forum ("ECAF").  *Id.*, Art. IX.

## B.    Dr. Atwal's EOS Account

Dr. Atwal is an individual who, at all relevant times, resided in New York.  Compl. ¶ 1.  Dr. Atwal maintained an EOS cryptocurrency account (the "Account").  *Id.* ¶ 17.  In August or September 2018, Dr. Atwal's credentials were misappropriated and $12 million USD worth of EOS were stolen from his Account.  *Id.* ¶¶ 18-23.

## C.    The Bitfinex Defendants

Defendant iFinex Inc. ("iFinex"), along with its wholly-owned subsidiaries Defendants BFXNA Inc. and BFXWW Inc. (collectively, "Defendants") operate Bitfinex, an online platform for exchanging and trading cryptocurrency.  Compl. ¶ 9; Dkt. 17 at 4; Dkt. 16 ¶¶ 3-4.  Defendants admit that they are incorporated in the British Virgin Islands and do not "have a single headquarters or home office," but rather "have decentralized operations in different countries."  Dkt. 17 at 4; Dkt. 16 ¶¶ 3-5.  Defendant BFXNA Inc. is also registered as a money services business with the Financial Crimes Enforcement Network of the U.S. Department of Treasury.  Dkt. 17 at 4; Dkt. 16 ¶ 7.

In 2018, the New York Attorney General ("NYAG") investigated Defendants pursuant to New York General Business Law Article 23-A (the Martin Act). *James v. iFinex Inc.*, 185 A.D.3d 22, 26 (1st Dep't 2020). In connection with its investigation, the NYAG obtained an Order directing Defendants to produce information and prohibiting Defendants from taking certain actions. *Id.* Defendants moved to dismiss the proceeding for lack of jurisdiction, but the Court denied Defendants' motion. *Id.* at 27-28. In finding that it had specific jurisdiction over Defendants, the Court credited the NYAG's evidence that Defendants had extensive contacts with New York, including Defendants' (a) accounts with New York financial institutions; (b) senior executive residing and working in New York; and (c) engagement of New York professional firms to assist them in their business. *Id.* Further, the NYAG demonstrated that Defendants "knew traders on the Bitfinex platform were located in New York, were consistently accessing the Bitfinex website from New York, and were conducting their trading activity from New York, from at least 2017 through mid-2019," encompassing the relevant time period here. Dkt. 24-5 ¶ 13. In the resulting settlement agreement, dated February 18, 2021, Bitfinex agreed that it "shall discontinue any trading activity with any New York persons or entities." Dkt. 24-7 ¶ 57(c).[2]

## D.   ECAF Arbitration and Orders

On or about September 25, 2018, Dr. Atwal submitted a claim with ECAF to confirm his ownership of the Account and for emergency injunctive relief. Compl. ¶ 24. ECAF issued an emergency order to the EOS blockchain to immediately prohibit any

---

[2]      On October 6, 2019, a putative class action was commenced against Defendants related to the issues being investigated by the NYAG, alleging that Bitfinex manipulated the price of digital assets and defrauded investors who purchased cryptocurrencies. *In re Tether & Bitfinex Crypto Asset Litig.*, No. 1:19-cv-09236, 2021 WL 4452181 (S.D.N.Y. Oct. 6, 2019). Although Defendants moved to dismiss the claims in that action, they notably did not contest jurisdiction. *Id.* at *85.

transfers of EOS from the Account and from other accounts with stolen EOS originating from the Account while the ECAF Claim was pending (the "Blacklist Order"). *Id.* ¶ 25. The Blacklist Order was publicly recorded on the EOS blockchain to provide notice to EOS users, including Defendants. *Id.*

On or about February 22, 2019, however, EOS were transferred out of Dr. Atwal's Account without his authorization notwithstanding the Blacklist Order. *Id.* ¶ 26. In particular, at least 158,000 EOS—valued at more than $670,000 USD—were transferred from the Account, without Dr. Atwal's authorization, to one or more accounts on the Bitfinex exchange. *Id.* ¶ 27.[3] On or about February 28, 2019, the ECAF Arbitrator issued a second public emergency order recorded on the EOS blockchain to prohibit any transfers from the Account and from any other accounts that in receipt of the stolen EOS, including on or after February 22, 2019 (the "Second Blacklist Order"). *Id.* ¶ 28.

On March 25, 2019, the ECAF Arbitrator issued a public ruling (the "ECAF Ruling"), resolving that Dr. Atwal was the "true owner" of the Account, transfers of EOS from the Account, including any transfers of EOS after issuance of the Blacklist Orders, were "unauthorized," and the stolen EOS "should be returned to [Dr. Atwal] from all accounts where they currently vest." *Id.* ¶ 29 and Ex. B.  The ECAF Ruling further directed that "Exchanges [such as Bitfinex] should treat this ruling as proof of ownership and return any [EOS] funds originating from [the Account]," and "exchanges [such as Bitfinex] are also bound by the constitution and should respect the validity of this ruling." *Id.*

---

[3]      In total, more than 2 million EOS, valued at approximately $12 million USD, were stolen from Dr. Atwal and at least partially transferred to Bitfinex accounts.  Compl. ¶ 21.  Discovery is necessary to uncover the full scope of transactions of those EOS on the Bitfinex exchange.

**E.     Bitfinex Fails to Freeze or Return Dr. Atwal's EOS**

On or about February 22, 2019, Dr. Atwal accessed the Bitfinex website from New York and followed the instructions on the Bitfinex website to demand that Defendants freeze his stolen EOS.  Compl. ¶ 33; Dkt. 25 ¶ 4.  Defendants assigned Dr. Atwal's request Ticket #966207 and responded that "the funds have been frozen," but contrary to Bitfinex's relevant Terms and Conditions, claimed that "a formal request from law enforcement" was required to maintain the freeze.  Compl. ¶ 34; Dkt. 25-1.  Defendants also did not identify what EOS had been frozen or when the purported freeze would expire.  *Id.*  All of these communications occurred while Dr. Atwal was in New York.  Dkt. 25 ¶ 6.

Dr. Atwal diligently pursued law enforcement assistance and conducted an investigation to determine the requested information to identify EOS transactions, which should not have been required given the Blacklist Orders and Bitfinex's own Terms and Conditions.  Compl. ¶ 36.  An FBI agent in Buffalo, New York, provided Defendants with a copy of the ECAF Ruling on or about June 27, 2019, and requested that Defendants freeze and return the stolen EOS to Dr. Atwal.  Compl. ¶ 36; Dkt. 24-4.

Defendants admittedly failed to timely freeze the stolen EOS in response to Dr. Atwal's or the FBI's request and/or failed to adequately maintain a freeze of the EOS, and failed to take other appropriate timely action with respect to the stolen EOS in response to those requests or their own representations.  Compl. ¶ 37.  To date, neither Defendants nor Bitfinex have returned any of the stolen EOS to Dr. Atwal.  *Id.* ¶ 39.

**F.     The Report and Recommendation**

Dr. Atwal commenced this action on February 22, 2022 and Defendants filed a motion to dismiss on May 27, 2022.  Dkt. 1, 15.  On October 19, 2022, Magistrate Judge

Leslie G. Foschio issued a Report and Recommendation granting in part and denying in part Defendants' motion.  Dkt. 27 ("R&R").  The R&R correctly found that the Court has personal jurisdiction over Defendants pursuant to CPLR 302(a)(1) because the Complaint sufficiently alleges that Defendants transacted business in New York and alternatively under CPLR 302(a)(3)(ii) because Defendant committed a tortious act outside of New York that caused injury in New York.  R&R at 12-19.  The Magistrate Judge also correctly found that the Complaint sufficiently alleges claims for negligence, conversion, and unjust enrichment.  *Id.* at 26-34, 38-40.  The Magistrate Judge recommended dismissal of Dr. Atwal's breach of contract claim without prejudice and with leave to amend, explaining that Dr. Atwal can "overcome the deficiencies" by alleging supplemental facts.  *Id.* at 42 and n.13.

Defendants object to the finding that the Court has jurisdiction, and that the Complaint sufficiently alleges negligence, conversion, and unjust enrichment.  Obj. at 1.  Defendants do not challenge that Dr. Atwal should be permitted to replead his breach of contract claim.  *Id.*  Defendants claim that the Magistrate Judge misapprehended certain facts.  Obj. at 9, 12.  But Defendants exaggerate the importance of these alleged erroneous facts, which are not material to the recommendations, and do not challenge numerous other findings that, standing alone, sufficiently support the recommendations.

Defendants object to findings that Dr. Atwal "accessed, from New York, the Bitfinex platform" and used "the Bitfinex website to trade in EOS" (Obj. at 9), but the Magistrate Judge's finding of jurisdiction expressly did not rely on whether Dr. Atwal was a Bitfinex customer or traded EOS on Bitfinex.  R&R at 15.  Defendants also do not challenge that Dr. Atwal used the Bitfinex website from New York, rather than the trading platform, to communicate with and transact business with Defendants.  R&R at 5.

Defendants further object to the finding that Dr. Atwal "purchas[ed] and maintain[ed] his EOS in an account on the Bitfinex platform" (Obj. at 9), but Defendants do not dispute that the accounts that form the basis of Dr. Atwal's claims—which accounts contained stolen EOS originating from Dr. Atwal's Account—were hosted on Bitfinex. R&R at 5-6.  Defendants failed to prohibit the transfer of EOS from those Bitfinex accounts or return the stolen EOS to Dr. Atwal from those Bitfinex accounts, as required by the Blacklist Orders and ECAF Ruling, despite requests from Dr. Atwal and the FBI.  *Id.*  These actions would have prevented Dr. Atwal's losses.  *Id.* at 7.[4]

## ARGUMENT

## POINT I

### THE REPORT & RECOMMENDATION CORRECTLY FOUND THAT THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

In diversity cases, personal jurisdiction is determined by the law of the state in which the district court sits.  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Where a court relies on pleadings and affidavits on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant."  *Id.*  Further, a court should "construe the pleadings and affidavits in the light most favorable to [plaintiff], resolving all doubts in his favor."  *Id.*.  The R&R correctly found that Dr. Atwal made a *prima facie* showing of specific personal jurisdiction over Defendants under New York law, and this finding should be adopted by the District Court.  R&R at 18-19.

---

[4]     Although Dr. Atwal did not himself trade the stolen EOS on Bitfinex, it is inconsequential, because Dr. Atwal's claim is that others purporting to be him or using his stolen EOS conducted transactions on Bitfinex that resulted in his losses.  Compl. ¶¶ 17-23.

A.    **Dr. Atwal's Claims Arise from Defendants' Transaction of Business in New York Pursuant to CPLR 302(a)(1)**

A New York court may exercise personal jurisdiction over a non-domiciliary if the party "transacts any business within the state" and the "cause of action aris[es] from" that business transaction.  CPLR 302(a)(1).  A defendant transacts business in New York when it "purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (citation omitted).  A cause of action "arises from" such a business transaction when there is an articulable "nexus" between the business transaction and claim.  *Id.* (citation omitted); *see also* R&R at 12-13.

CPLR 302(a)(1) is a "single act statute" and "proof of [just] one transaction in New York is sufficient to invoke jurisdiction, even if the defendant never enters the state." *Taylor Devices, Inc. v. Walbridge Aldinger Co.*, 538 F. Supp. 2d 560, 573 (W.D.N.Y. 2008) (citations and alterations omitted).  The "transaction of business in New York is broadly defined," and courts often use a "totality of the circumstances test."  *Id.* at 573-34 (citation omitted); *see also* R&R 13-14.  In particular, when jurisdiction is based on a defendant's website, courts look to the degree of "interactivity" and commercial nature of the site. *Citigroup*, 97 F. Supp. 2d at 565.  Often, a website that "permits the exchange of information between users in another state and the defendant" may be the basis for personal jurisdiction depending "on the level and nature of the exchange."  *Id.*

For instance, in *Citigroup*, defendant operated a website that involved "more than the passive posting of information" and included an application, a chat function and an email address to correspond with a representative.  *Citigroup Inc. v. City Holding Comp.*, 97 F. Supp. 2d 549, 565 (2d Cir. 2000).  The Court distinguished the Citigroup website from a

"passive" website "where the defendant makes information available on what is essentially a . . . an advertisement in a nationally-available magazine or newspaper," and held that the level of website interactivity was "significant and unqualifiedly commercial in nature and thus rises to the level of transacting business required under CPLR § 302(a)(1)." *Id*. Here, as in *Citigroup*, the Bitfinex website was not merely "passive" site that posted information. Instead, it allowed visitors—whether or not those visitors were Bitfinex customers—to communicate with a Bitfinex representative, email questions, and receive responses from Bitfinex representatives. Dkt. 25 ¶¶ 4-6. The Bitfinex website therefore rises to the level of transacting business in New York under CPLR 302(a)(1).

**1.     Defendants Transacted Business in New York Through Their Interactions with Dr. Atwal**

The record establishes that, although Dr. Atwal was not a Bitfinex customer, he accessed the Bitfinex website from New York and used the Bitfinex website to conduct business transactions with Defendants from New York—*e.g.,* submit a request to Defendants regarding their products and services, converse with Defendants, open a support ticket, and prompt Defendants to purportedly freeze certain Bitfinex accounts. Dkt. 25 ¶ 4; Dkt. 25-1; Compl. ¶¶ 33-35. Dr. Atwal's use of the Bitfinex website from New York is therefore more than sufficiently interactive to confer jurisdiction over Defendants. *Citigroup*, 97 F. Supp. 2d at 565-66. Indeed, Defendants purposely availed themselves of the benefits of New York—and thus transacted business in New York—through the Bitfinex website by making the website available in New York and knowingly permitting New York customers to trade on Bitfinex. Dkt. 24-5; *iFinex*, 185 A.D.3d at 26 (finding these facts sufficient to confer personal jurisdiction over Defendants for the same time period).

Jurisdiction over Defendants is especially appropriate when taking into account the "totality of the circumstances" concerning Defendants' other extensive New York activities aside from their operation of the Bitfinex website. *Citigroup*, 97 F. Supp. 2d at 566 ("Even if [defendant's] internet activity were not enough, jurisdiction under CPLR § 302(a)(1) is further bolstered by other activities."). This includes Defendants, during the relevant time period, having New York customers, an executive who resided in and conducted business from New York, accounts with New York banks, and the retention of New York professional firms. Dkt. 24-5; *iFinex*, 185 A.D.3d at 31.

In finding personal jurisdiction, the R&R rejected Defendants' argument (repeated in its Objections) that Dr. Atwal's "access of the Bitfinex website was not a business transaction, but merely a communication." R&R at 15. Contrary to Defendants' claim, Obj. at 9, the R&R did not rely on whether Dr. Atwal was a Bitfinex customer or traded EOS on Bitfinex. R&R at 15 ("Without deciding whether [Dr. Atwal's] use of the Bitfinex website to trade in EOS cryptocurrency constituted a business transaction . . . ."). Instead, the R&R appropriately relied on facts that are not disputed by Defendants—Dr. Atwal's communications through the Bitfinex website and transactions with Defendants from New York, resulting in Defendants' purported freezing of Bitfinex accounts, and Defendants' subsequent failure to maintain a freeze on those Bitfinex accounts—as sufficient to confer personal jurisdiction:

> Plaintiff also alleges that after being advised by [Dr. Atwal] of allegedly fraudulent activity that resulted in unauthorized transfers of EOS from [Dr. Atwal's] Account to other accounts on the Bitfinex platform, ***Defendants failed to ensure that no further transactions of the [Dr. Atwal's] EOS currency occurred***. Such allegations, if true, ***allege more than a mere communication*** . . . . Accordingly, the Complaint sufficiently alleges facts to subject Defendants to personal jurisdiction.

- 12 -

*Id.* at 15-16 (emphasis added).  Defendants' interactions with Dr. Atwal through the Bitfinex website, taken together with the "totality of the circumstances" of Defendants' other extensive New York contacts, are more than sufficient to find specific jurisdiction over Defendants in New York.  *Citigroup*, 97 F. Supp. 2d at 566.

        Defendants cite *Best Van Lines Inc. v. Walker*, 490 F. 3d 239 (2d Cir. 2007), to argue that "operating a nationally-available website" is not a business transaction, and that a website's "accessibility by New Yorkers is not sufficient" to confer jurisdiction.  Obj. at 11. This argument, however, misses the point.  Jurisdiction is based on Dr. Atwal's interactions and transactions with Defendants through the Bitfinex website—including Defendants' affirmative representations to Dr. Atwal and the FBI in New York—and not simply the presence of the website on the internet.  *Citigroup*, 97 F. Supp. 2d at 565-66.  Further, *Best Van Lines* is inapposite, because it involved defamatory statements on defendants' website, and "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation."  490 F. 3d at 248. It is further distinguishable because, unlike Dr. Atwal's interactive use of the Bitfinex website in New York to actively communicate with Defendants, comments posted on the defendant's website in *Best Van Lines* were passive and simply "accessible to readers in New York."  *Compare id.* at 253 with *Citigroup*, 97 F. Supp. 2d at 565-66.[5]

---

[5]    The other cases cited by Defendants, Obj. at 11, are also distinguishable.  *See A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568 (E.D.N.Y. 2011) (no allegation that defendant "transacts services . . . through its website," and although the website contained a link to email defendant, no allegation that plaintiff actually clicked on link or interacted with defendant); *Virgin Enterprises Ltd. v. Virgin Eyes LAC*, No. 08-CV-8564, 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) (website was "minimally functional" and not interactive).

**2.    Dr. Atwal's Claims Have a Direct Nexus
to His Interactions with Defendants**

Dr. Atwal's claims also "arise from" Defendants' transaction of business in New York.  CPLR 302(a)(1).  As the R&R correctly held, this inquiry is "relatively permissive" under New York law, and "the claim need only be in some way arguably connected to the transaction."  R&R at 16 (citation and quotations omitted).  Here, Dr. Atwal's use of the Bitfinex website from New York to communicate with and facilitate his transactions with Defendants—*i.e.*, Defendants purported freezing his stolen EOS in Bitfinex accounts—is at the center of this action and, thus, has an articulable nexus to his claims.  Dkt. 25 ¶¶ 4-6; Compl. ¶ 33; *Citigroup*, 97 F. Supp. 2d at 566.  The R&R thus correctly found that the Dr. Atwal sufficiently alleged a connection to establish jurisdiction. R&R at 16-17 (holding "Defendants' failure . . . to prevent the unauthorized transfers of the EOS from the Account to other accounts on the [Bitfinex] platform establish the alleged claims are arguably connected to transactions that occurred on the Bitfinex platform initiated by [Dr. Atwal], located in New York.").

Defendants also contend that they could not possibly transact business in New York because "Defendants have not allowed U.S. customers . . . to have Bitfinex accounts since 2018."  Obj. at 10, 12.  This same claim, however, was already rejected by both by the R&R and the Court in *iFinex*.  R&R at 15-16; *iFinex*, 185 A.D.3d at 29 (NYAG investigation found "New York-based customers nevertheless used the Bitfinex platform . . . as recently as May 14, 2019").  And, in any event, Dr. Atwal's claims are based on his interactions with Defendants in New York, not whether he was a Bitfinex customer. *Citigroup*, 97 F. Supp. 2d at 565-66.  In sum, the R&R correctly found that Dr. Atwal established a *prima facie* case for personal jurisdiction under CPLR 302(a)(1).

**B.**  **Alternatively, Defendants' Tortious Conduct Caused Injury in New York Pursuant to CPLR 302(a)(3)(ii)**

The R&R also correctly found that, in the alternative, the Court may exercise jurisdiction pursuant to CPLR 302(a)(3)(ii), which provides for jurisdiction based on the defendant's tortious conduct outside New York that caused injury in New York, where a defendant "expected or should reasonably have expected the act to have consequences in the state, and the defendant derives substantial revenue from interstate or international commerce." R&R at 17-18 (quoting *Citigroup*, 97 F. Supp. 2d at 568). Defendants do not contest that their tortious acts were committed outside of New York. Obj. at 13-16. The R&R also correctly determined that Defendants' claim that it banned U.S. trading is doubtful, but even if true (it is not), it supports that Defendants derive a substantial portion of their income from international commerce. R&R at 17-18.

Defendants wrongly object to the R&R's finding that Dr. Atwal suffered injury in New York. The R&R correctly explained that, consistent with New York law, "injury within the state includes financial loss." R&R at 17; *Baskett v. Autonomous Research LLP*, 2018 WL 4757962, at *10 (S.D.N.Y. Sept. 18, 2018) (R&R at 18) (jurisdiction was proper because "the effects of any business-related conduct . . . would be felt by Plaintiff in New York, where she is located"); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016) ("Thus, the situs of the injury . . . was in New York because [plaintiff's] financial loss occurred there.").[6]

---

[6]  Defendants rely on inapposite cases that involve different types of injury than alleged in this action and, as a result, those cases use a different analysis regarding the "situs" of injury. Obj. at 14; *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013) (copyright claim); *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740 (2d Cir. 2020) (lost customers); *Zito v. United Airlines, Inc.*, 523 F. Supp. 3d 377, 387 (W.D.N.Y. 2021) (personal injury on plane); *Cordice v. LIAT Airlines*, No. 14-CV-2924, 2015 WL 5579868, at *4 (E.D.N.Y. Sept. 22, 2015) (same).

The R&R's finding of jurisdiction under CPLR 302(a)(3)(ii) is also consistent with New York law because Dr. Atwal was located in New York when he received misrepresentations from Defendants—*i.e.*, that Defendants would freeze his stolen EOS in Bitfinex accounts. *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 900 (2d Cir. 1980) (holding "injury was immediately felt in New York where plaintiffs were domiciled and doing business, where they were located when they received the misrepresentations, and where the [goods] were to be shipped"); *Pariente v. Scott Meredith Literary Agency, Inc.*, No. 90 Civ. 0547, 1991 WL 19857, at *3 (S.D.N.Y. Feb. 11, 1991) (holding defendant "suffered injury in New York" where he "received and relied upon all of the misrepresentations in New York"). Similarly, in *Pincione v. D'Alfonso*, 506 F. App'x 22 (2d Cir. 2012), cited by Defendants (Obj. at 14-15), the Court found that plaintiff had satisfied CPLR 302(a)(3)(ii) where plaintiff received a fraudulent document in New York.

Defendants further argue that the R&R erred by failing to address whether Defendants could reasonably expect their actions to have consequences in New York. Obj. at 15. Such a finding, however, is implicit in the finding of jurisdiction and is well-established in the record. Defendants knew, for example, that New York customers were using the Bitfinex platform to trade during the relevant time period (*see* Dkt. 24-5), Defendants were communicating with Dr. Atwal in New York and the FBI in New York (Dkt. 25 and 25-1), and any financial impact would be felt by Dr. Atwal in New York. Accordingly, the R&R correctly found that, in the alternative, Dr. Atwal established a *prima facie* case for personal jurisdiction under CPLR 302(a)(3)(ii).

**C.**     **Jurisdiction over Defendants Comports with Due Process**

The R&R correctly held that, because the New York long-arm statute is "more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met." R&R at 18. The record further establishes that, based on Defendants' significant New York contacts (Dkt. 24-5; *iFinex*, 185 A.D.3d at 29), federal due process is satisfied because Defendants could "reasonably anticipate being haled into court" in New York. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Further, the exercise of jurisdiction is reasonable. In determining whether personal jurisdiction is reasonable under due process, the court must consider: (1) the burden on the defendant, (2) the interests of the forum State, (3) plaintiff's interest in obtaining relief, (4) the judicial system's interest in efficiently resolving controversies; and (5) the interest of States in advancing fundamental social policies. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012).[7] Here, there is no excessive burden on Defendants, who claim they have no principal place of business; New York has an interest in protecting its consumers from misleading practices and theft and ensuring New York law enforcement requests are honored; efficiency is best served in New York where key witnesses, including Dr. Atwal and the FBI Special Agent, are located; and there is no alternative forum. *Id.* at 731. Defendants do not raise any arguments concerning the reasonableness of jurisdiction under due process in their Objections. Obj. at 16-17.

---

[7]      States have a "manifest interest in providing effective means of redress for its residents." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (citation omitted). Further, "where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985) (citation omitted).

Accordingly, the Court should adopt the R&R's recommendation and deny Defendants' Rule 12(b)(2) motion.[8]

## POINT II

**THE REPORT & RECOMMENDATION CORRECTLY FOUND THAT THE COMPLAINT SUFFICIENTLY ALLEGES CLAIMS FOR NEGLIGENCE, CONVERSION, AND UNJUST ENRICHMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. The Court is "required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff." *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F. Supp. 2d 120, 127 (W.D.N.Y. 2012).

The R&R correctly found that the Complaint sufficiently alleges claims for negligence, conversion, and unjust enrichment.

## A.   The Complaint Sufficiently Alleges a Claim for Negligence

### 1.   The Complaint Sufficiently Alleges a Duty of Care

It is black-letter law that a negligence claim requires "the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party." *Morgan Stanley & Co.. v. JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248,

---

[8]      Alternatively, should the Court find that Dr. Atwal failed to make a *prima facie* showing of jurisdiction (he has), the Court should grant jurisdictional discovery, including discovery related to transfers of the stolen EOS. *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014).

255 (S.D.N.Y. 2009) (citation omitted).  To determine whether a duty exists, courts "apply a broad range of societal and policy factors."  *Id.*  "One factor in determining if a duty has arisen between a plaintiff and defendant is the principle that voluntary assumption of an action imposes a duty of reasonable care in the performance of that action."  *Id.* at 255-56.  Indeed, New York law has long recognized that "anyone who voluntarily assumes a duty can be held liable for negligence in the performance of that duty."  *Id.* at 256.

For instance, in *Morgan Stanley*, a rent check was stolen from a "lockbox" facility operated by Chase and then deposited into a Morgan Stanley account.  *Id.* at 251.  Morgan Stanley asserted a negligence claim against Chase, and Chase moved to dismiss, arguing that it did not owe a duty of care to non-clients.  *Id.* at 255.  The Court, however, denied the motion to dismiss, holding "that by operating a 'lockbox', Chase voluntarily assumed a duty of reasonable care to foreseeable noncustomers."  *Id.* at 256.  Here, the Complaint sufficiently alleges that Defendants voluntarily assumed a duty of care to Dr. Atwal when they agreed to and implemented a freeze on Dr. Atwal's stolen EOS funds.  Compl. ¶ 34; *Morgan Stanley*, 645 F. Supp. 2d at 256.

The R&R therefore correctly found that the Complaint stated a claim for negligence based on Defendants' voluntary assumption of a duty to Dr. Atwal.  R&R at 30.  The R&R analogized this action to *Morgan Stanley*, noting that the "[k]ey to the finding [in *Morgan Stanley*] that the complaint sufficiently alleged a negligence claim was that the defendant bank assumed a duty of care because the defendant bank, which had control over the lockbox . . . was best situated to prevent the loss."  R&R at 29.  The R&R found:

> [Dr. Atwal] has plausibly alleged that ***by operating the online platform on which the cryptocurrency transaction took place***, with such transactions recorded on the EOS blockchain, ***Defendants were in the best position to monitor transactions of EOS involving***

> *[Dr. Atwal's] Account*, and thus voluntarily assumed a duty of
> care which Defendants [breached when they] failed to stop
> transactions in EOS from [Dr. Atwal's] Account in violation of
> the Blacklist Orders and the ECAF Ruling.

*Id.* at 30 (emphasis added).[9]

The R&R's finding of a duty of care is well supported by facts alleged in the

Complaint.  Compl. ¶ 69.  The R&R's determination was not "premised" on whether Dr.

Atwal maintained an Account on Bitfinex.  Obj. at 17-18.  Rather, the R&R held that

Defendants were in the best position to monitor transactions because they operated Bitfinex.

R&R at 30.  They were in the best position to prevent the loss because they maintained

administrative control over accounts that contained the stolen EOS—accounts that, based

on Defendants' assurances to Dr. Atwal and the Blacklist Orders, should have been frozen,

but were not.  Compl. ¶ 70.  Further, whether Dr. Atwal was a customer of Bitfinex, Obj.

17-18, is of no moment.  *Morgan Stanley*, 645 F. Supp. 2d at 257 ("The fact that it was a

noncustomer . . . who sent the check to the lockbox is not dispositive where, as here, Chase

took lawful possession of the check without intent to appropriate it.").

Consistent with the R&R's findings, the Complaint alleges that Defendants

had knowledge of the Blacklist Orders and the ECAF Ruling, and they were bound by the

Blacklist Orders and the ECAF Ruling, because the Blacklist Orders and the ECAF Ruling

were "publicly available" and "recorded on the EOS blockchain."  Compl. ¶¶ 10, 25, 28-29;

R&R at 29.  Moreover, the FBI provided Defendants with a copy of the ECAF Ruling.

---

[9]      Defendants attempt to distinguish *Morgan Stanley* by incorrectly claiming that Bitfinex had
not "voluntarily assumed custody of [Dr. Atwal's] assets" because a "third-party transferred the EOS
to Bitfinex's platform without Bitfinex's knowledge or permission."  Obj. at 20.  This simply cannot
be accurate, however, because the bad actor must have been a Bitfinex customer to transfer the EOS
to a Bitfinex account, and thus had Defendants' permission.  Regardless, there can be no doubt that
Defendants "assumed custody" of Dr. Atwal's EOS by freezing Bitfinex accounts.  At that point, no
third party could transfer the stolen EOS without Defendants' approval.

Compl. ¶ 36.[10]  Accordingly, the Complaint sufficiently alleges that Defendants negligently breached their duty to Dr. Atwal by, among other actions, failing to comply with the Blacklist Orders and the ECAF Ruling by permitting transactions of the stolen EOS and failing to return the EOS to Dr. Atwal.  Compl. ¶ 70.

### 2.  Dr. Atwal Detrimentally Relied on Defendants' Assurances that They Had Frozen Bitfinex Accounts with Stolen EOS

The cases relied upon by Defendants establish that an assumed duty of care arises where "(1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking." *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998) (Obj. at 19).  In other words, a defendant has assumed a duty where "in reliance upon the undertaking, [plaintiff] has been induced to forego other opportunities of obtaining assistance." *Id*. (citation omitted).  Defendants, however, incorrectly assert that they could not have assumed a duty because Dr. Atwal was in no "worse" position as a result of Bitfinex.  Obj. at 19-21.  This ignores that, in reliance on Defendants' representations that they had frozen accounts, Dr. Atwal refrained from taking certain actions to restrain or recover the EOS, and instead "diligently pursued law enforcement assistance," as instructed by Defendants.  Compl. ¶¶ 34-36.  This "detrimental reliance" was sufficient to impose a duty of care.  *Tavarez*, 143 F.3d at 747.

Defendants also claim that "Bitfinex terminated any duty when it warned Plaintiff that law enforcement was needed to maintain the freeze, and Plaintiff did not respond."  Obj. at 20-21.  This is wrong.  First, Defendants ignore that the FBI, in fact,

---

[10]     Defendants' argument that Bitfinex was not a party to the ECAF arbitration proceeding, Obj. at 18, is a red herring.  The Complaint does not seek to enforce the ECAF Ruling.  Rather, the Complaint alleges that Bitfinex, as a member of the EOS community, owed a duty to Dr. Atwal to comply with the Blacklist Orders and the ECAF Ruling.  Compl. ¶¶ 69-70.

contacted Defendants on behalf of Dr. Atwal.  Compl. ¶ 37.  Second, Defendants did not

notify Dr. Atwal that they were releasing their freeze on the Bitfinex accounts, and therefore

Defendants never terminated their duty of care.  *C.f.*, *Tavarez*, 143 F.3d at 747 ("[Plaintiff's]

testimony establishes that [defendant] terminated and discharged any duty she may have

previously assumed by announcing her departure to answer the telephone.").

       Further, the cases cited by Defendants establish that, once a party has

undertaken a duty of care, they are "required to exercise reasonable care to terminate [their]

services in such a manner that there is no unreasonable risk of harm to the other, or to

continue them until they can be so terminated."  *Tavarez*, 143 F.3d at 747 (citation omitted).

Thus, Defendants could not leave Dr. Atwal "in an unreasonably precarious position, or

otherwise exposed to an unreasonable risk of harm."  *Id*.  Yet, that is precisely what

occurred.  Defendants informed Dr. Atwal that certain Bitfinex accounts had been frozen,

but then left Dr. Atwal and his EOS completely unprotected by unilaterally lifting the

account freeze without his knowledge, leaving him vulnerable to the transfers of his stolen

EOS from those accounts that occurred thereafter.  Compl. ¶ 38.

       Finally, Defendants mischaracterize their assumption of a duty of care as a

mere "request for assistance."  Obj. at 19-20.  Unlike in the case cited by Defendants,

Defendants did not simply respond to Dr. Atwal's request with a vague promise to assist

him; instead, Defendants voluntarily assumed a duty of care by representing that they had

taken affirmative action by freezing accounts, asking for additional information, and

providing instructions for Dr. Atwal to obtain law enforcement intervention.  *See Kelso v.

Wall St. Funding*, 94 A.D.3d 1186, 1188 (3d Dep't 2012) (finding no duty of care where

defendants did not take any affirmative action and simply offered to "make efforts" and

"continue to work" with a customer "to correct the problem").  Accordingly, the Court

should adopt deny Defendants' motion to dismiss Dr. Atwal's negligence claim.

**B.      The Complaint Sufficiently Alleges a Conversion Claim Because
         Defendants Unlawfully Exercised Control Over Dr. Atwal's EOS**

Under New York law, conversion is the "unauthorized assumption and

exercise of the right of ownership over goods belonging to another to the exclusion of the

owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir 2007).

"This includes a denial or violation of the plaintiff's dominion, rights, or possession over

[his] property." *Id.* at 404 (citation omitted).  The Complaint sufficiently alleges conversion

based on Defendants' unlawful exercise of control over Dr. Atwal's EOS and interference

with Dr. Atwal's use or enjoyment of his EOS, including Defendants' failure to return the

stolen EOS in Bitfinex accounts to Dr. Atwal.  Compl. ¶¶ 37-39; *Lawson v. Full Tilt Poker

Ltd.*, 930 F. Supp. 2d 476, 487 (S.D.N.Y. 2013) (denying motion to dismiss conversion

claim where plaintiff was denied access to funds in online poker accounts).

The R&R correctly held that the Complaint plausibly alleges a conversion

claim.  R&R at 33-34.  It explained that the ECAF Ruling "provides that Plaintiff is the

'true owner' of the EOS in the Account," and that "by failing to arrange to have the EOS

returned" to Dr. Atwal pursuant to the ECAF Ruling, "Defendants interfered with [Dr.

Atwal's] use, benefit, and possession of the allegedly stolen EOS."  *Id.*

Defendants do not dispute that they exercised control over Dr. Atwal's stolen

EOS in the Bitfinex accounts or that they failed to return the stolen EOS to Dr. Atwal.  *Id.*

¶¶ 34, 39.  Rather, Defendants challenge whether Dr. Atwal demonstrated a superior right

of possession in the EOS.  Obj. at 21.  This ignores several facts alleged in the Complaint,

including that Dr. Atwal did not "authorize or permit the EOS to be transferred from the

Account," and he "informed Defendants that his stolen EOS were in one or more accounts on the Bitfinex exchange" (Compl. ¶¶ 23, 33); and Defendants had notice of the Blacklist Orders and ECAF Ruling because they were publicly posted on the EOS blockchain, and the FBI provided Defendants with a copy of the ECAF Ruling.

This is not, as Defendants suggest, a conversion claim based on a "disputed claim of ownership" where the property holder "waits for a dispute to be clarified" before returning the property.  Obj. at 21.  The ECAF Ruling conclusively resolved any "disputed" claim of ownership and established that Dr. Atwal had a superior right to the EOS, and the FBI acknowledged Dr. Atwal as the victim and rightful owner of the EOS, yet Defendants refused to return the EOS after requests by the FBI and Dr. Atwal.[11]

The Court should therefore adopt the R&R's recommendation and deny Defendants' motion to dismiss Dr. Atwal's conversion claim.

## C.    The Complaint Sufficiently Alleges a Claim for Unjust Enrichment

A claim for unjust enrichment requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted). As the R&R correctly held, "these elements are pleaded by [Dr. Atwal] alleging that Defendants received 'Dr. Atwal's EOS and/or the fees or other benefits . . . from the transfer of Dr. Atwal's EOS on the Bitfinex exchange.'"  R&R at 40 (citing Compl. ¶ 59).

---

[11]    The cases cited by Defendants are inapposite.  In *Zaretsky v. Gemological Inst. of Am., Inc.*, No. 14 Civ. 1113, 2014 WL 1678990, at *4 (S.D.N.Y. Apr. 28, 2014), an appraisal company refused to release a diamond because a police report precluded an inference of clear title.  *Id.* at *5.  Here, the opposite occurred—Defendants possessed the ECAF Ruling establishing that Dr. Atwal was the owner of the EOS.  In *Rezende v. Citigroup Glob. Markets, Inc.*, No. 09 Civ. 9392, 2010 WL 4739952 (S.D.N.Y. Nov. 18, 2010), the Court held that a bank did not convert funds deposited in its accounts where it was notified of competing claims and then deposited the funds with court.  *Id.* at *5.  Here, the ECAF Ruling resolved any claims, and Defendants did not deposit funds into court.

Defendants argue that they did not receive any benefit at Dr. Atwal's expense because the transaction fees were paid by third parties, Obj. at 22-23, but New York law provides that "it does not matter whether the benefit is directly or indirectly conveyed." *Myun-Uk Choi*, 890 F.3d at 69 (holding investors alleged unjust enrichment claim against securities trading firm based on traders' market manipulation).[12]  The Court should therefore deny Defendants' motion to dismiss the unjust enrichment claim.

**POINT III**

**DEFENDANTS DO NOT CHALLENGE THE RECOMMENDATION THAT DR. ATWAL'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

The Magistrate Judge recommended that Dr. Atwal's breach of contract claim should be dismissed without prejudice, and with "leave to file an amended complaint addressing the deficiencies . . . as delineated in this Report and Recommendation."  R&R at 42.  Defendants do not object to this recommendation, and therefore waive any such objections.  Local Rule 72(b).  Accordingly, the Court should adopt this recommendation for the reasons stated in the R&R.  R&R at 42-43.

**CONCLUSION**

For the foregoing reasons, the Court should (a) adopt the Report and Recommendation; (b) deny Defendants' motion to dismiss under Rule 12(b)(2); (c) deny Defendants' motion to dismiss under Rule 12(b)(6) with respect to Dr. Atwal's claims for negligence, conversion, and unjust enrichment; and (d) grant leave for Dr. Atwal to file an amended complaint with respect to his breach of contract claim.[13]

---

[12]     Equity and good conscience also require restitution because Defendants permitted transfers of Dr. Atwal's EOS in violation of the Blacklist Orders and ECAF Ruling.  R&R at 40.
[13]     In the event that the Court grants Defendants' motion to dismiss in whole or in part, Dr. Atwal respectfully requests permission to file an amended complaint.

Dated:  Buffalo, New York
        December 7, 2022

PHILLIPS LYTLE LLP


By:  _/s/ Anna Mercado Clark_
        Anna Mercado Clark
        Jeffrey D. Coren
Attorneys for Plaintiff
*Ephraim Atwal, M.D.*
One Canalside
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
aclark@phillipslytle.com
jcoren@phillipslytle.com

Doc #1603752