UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED

MAR 2 2 2023

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

---

EPHRAIM ATWAL, M.D.,

        Plaintiff,

v.                                                                22-cv-149 (JLS) (LGF)

IFINEX INC., BFXNA INC., and BFXWW
INC.,

        Defendants.

---

## DECISION AND ORDER

Plaintiff Ephraim Atwal commenced this action against Defendants iFinex,
BFXNA, and BFXWW, alleging conversion, trespass to chattels, breach of contract,
unjust enrichment, violation of N.Y. Gen. Bus. L. § 349, and negligence. *See
generally* Dkt. 1. Plaintiff also seeks a permanent injunction. *Id.* at 11. Atwal's
allegations concern cryptocurrency that a third-party stole from Atwal and
subsequently transferred to accounts on Defendants' trading platform, Bitfinex. *See*
Dkt. 1, at 3–6.

Defendants moved to dismiss. Dkts. 15, 17. And this Court referred the case
to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28
U.S.C. § 636(b)(1)(A) and (B). Dkt. 9.

On October 19, 2022, Judge Foschio issued a Report and Recommendation
("R&R") that recommended denying Defendants' motion to dismiss for lack of
personal jurisdiction. Dkt. 27, at 18–19. Judge Foschio also recommended granting

Defendants' motion to dismiss for failure to state a claim as to the claims for breach of contract, violation of N.Y. Gen. Bus. L. § 349, and injunctive relief, and denying the motion as to the claims for conversion, trespass to chattels, unjust enrichment, and negligence.  Dkt. 27, at 44.

For the reasons discussed below, the Court accepts Judge Foschio's recommendations in part—namely, that this Court lacks general jurisdiction over Defendants.  The Court, however, rejects Judge Foschio's conclusion that the Court possesses specific jurisdiction over Defendants and his corresponding recommendation to deny Defendants' motion to dismiss on that ground.  In sum, Defendants' motion to dismiss is granted in full for lack of personal jurisdiction.

## BACKGROUND

### I.   THE COMPLAINT

Defendants operate Bitfinex—an online platform for trading cryptocurrency. Dkt. 1, at 2 ¶ 9.  EOS is a cryptocurrency that operates on blockchain technology. *Id.* at 2 ¶ 10.  The EOS Constitution governs EOS transactions and provides that "[t]his Constitution is a multi-party contract entered into by the Members by virtue of their use of this [EOS] blockchain."  Dkt. 1, at 2 ¶ 11–12; *see* Dkt. 24-1.

According to Atwal, he maintained a private EOS cryptocurrency account[1] (the "EOS Account") beginning in June 2017.  Dkt. 1, at 3 ¶ 17.  In August or

---

[1] Atwal does not identify where he stored his EOS.  However, Atwal was not a customer of Bitfinex, nor did he trade the stolen EOS on Bitfinex.  *See* Dkt. 23, at 19; Dkt. 31, at 14 n.4.

September 2018, a third party fraudulently obtained Atwal's credentials to access the EOS Account. *Id.* at 3 ¶ 19.  On September 25, 2018, Atwal submitted a claim with the EOS Core Arbitration Forum ("ECAF") to confirm his ownership of the compromised EOS account, and sought an emergency account freeze. *Id.* at 4 ¶ 24. On the same day, the ECAF arbitrator issued an emergency order restricting transfers from Atwal's EOS account and several other accounts that received transfers from it. *Id.* at 4 ¶ 25.  This order was recorded on the blockchain. *Id.*  Yet, on February 22, 2019, an unknown third party transferred—without authorization—at least 158,000 EOS from Atwal's EOS account to one or more accounts on the Bitfinex exchange. *Id.* at 3 ¶ 20, 4 ¶ 27.

Atwal then contacted Bitfinex—by submitting a ticket on their website—and informed Defendants that a third party transferred Atwal's EOS to one or more accounts on their platform. *Id.* at 5 ¶ 33; *see* Dkt. 25-1, at 2.  He also requested that Defendants freeze the EOS held in those Bitfinex accounts. *Id.*  In response, Defendants told Atwal that they froze the EOS, but required law enforcement involvement to maintain the freeze. Dkt. 1, at 5 ¶ 34.  Defendants did not identify what EOS they froze or when the freeze would expire. *Id.* at 6 ¶ 35.  Atwal thereafter "diligently pursued law enforcement assistance and conducted an investigation to determine information necessary to identify relevant EOS transactions." *Id.* at 6 ¶ 36.

On February 28, 2019, the ECAF Arbitrator issued a second emergency order restricting transfers from Atwal's EOS account—or any accounts that received

transfers of the stolen EOS. *Id.* at 4–5 ¶ 28. On March 25, 2019, the ECAF
Arbitrator ruled that Atwal owned the EOS and, therefore, it should be returned to
him. *Id.* at 5 ¶¶ 29–31; *see* Dkt. 1-2. The ECAF ruling directed exchanges to treat
it as proof of ownership and return the EOS to Atwal. *Id.* at 5 ¶ 32.

Bitfinex emailed Atwal for the second time on April 21, 2019—inquiring
whether Atwal made any progress with his law enforcement request, and informing
Atwal that funds could not be held without a legal basis and informal victim reports
were insufficient. Dkt. 25-1, at 1. On June 27, 2019, the FBI provided a copy of the
ECAF ruling to Defendants and demanded that they freeze the EOS held in
Bitfinex accounts and return it to Atwal. Dkt. 1, at 6 ¶ 36; *see* Dkt. 24-4, at 2.

Atwal alleges that "Defendants failed to freeze the stolen EOS in response to
Dr. Atwal's and/or the FBI's request, failed to adequately maintain a freeze of the
stolen EOS, and/or failed to take other appropriate timely action with respect to the
stolen EOS . . . ." Dkt. 1, at 6 ¶ 37. Additionally, Atwal alleges that, "due to
Bitfinex's internal staffing issues and/or its failure to comply with its internal
policies or procedures," Defendants failed to respond timely to, or take appropriate
measures in response to, the FBI's requests to freeze certain accounts on the
Bitfinex exchange, "and the EOS was transferred out of those accounts before a
freeze was put in place." *Id.* at 6 ¶ 38.

## II.   DEFENDANTS' MOTION TO DISMISS

Defendants moved to dismiss the complaint for lack of personal jurisdiction,
pursuant to Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)"), and for failure to state a claim,

pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 15. Defendants argued that the Court

lacks personal jurisdiction pursuant to N.Y. C.P.L.R. 302(a)(1) because Defendants

"are overseas entities, which by their own terms, specifically do not transact

business in New York." Dkt. 17, at 20. According to their declaration in support

(Dkt. 16), none of the Defendants has a single headquarters or office—rather, they

have decentralized operations in different countries, including Hong Kong,

Switzerland, and Taiwan. Dkt. 16, at 2 ¶ 5. Defendants do not maintain any offices

in the United States. *Id.* at 2 ¶ 6. In August 2017, Bitfinex banned individual

customers in the U.S. from owning or operating accounts or otherwise transacting

on Bitfinex. *Id.* at 2 ¶ 10. And in August 2018, Bitfinex barred U.S. entity and

corporate customers from transacting on the platform. *Id.* Defendants do not direct

their advertising or marketing to individuals or entities in the U.S., including New

York. *Id.* at 3 ¶ 14. Further, because Defendants do not transact business in New

York, Plaintiff's claims do not arise from such a non-existent business transaction.

Dkt. 17, at 20. As to N.Y. C.P.L.R. 302(a)(3)(ii), Defendants maintain that Plaintiff

failed to allege an injury in New York because Defendants' operations take place

entirely outside of New York—and merely suffering an economic injury in New York

is insufficient under the statute. *Id.* at 21–22.

In response, largely relying on court filings from a different legal action

involving iFinex[2], Plaintiff argued that Defendants' contacts with New York

---

[2] Plaintiff asks the Court to take judicial notice of filings from *James v. iFinex Inc.*,
185 A.D.3d 22 (2020), and *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp.
3d 55 (S.D.N.Y. 2021). Dkt. 23, at 12 n.3, *id.* at 13 n.4; Dkt. 24, at 2 n.1; *see* Dkts.

sufficiently demonstrate that they transacted business in New York, as required by

C.P.L.R. 302(a)(1). *See* Dkt. 23, at 10 n.2, 12–14, 19. Further, even if Bitfinex

prohibited New York customers from owning or operating an account during the

relevant time period, Defendants' website was "accessible to and could be used by

New York consumers to conduct certain transactions." *Id.* at 19. Thus, even though

---

24-5, 24-6, 24-7. Defendants oppose that request. Dkt. 26, at 11. On a Rule 12(b)(2) motion to dismiss, "the court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Here, Plaintiff primarily relies on allegations in an affidavit filed in a different case to allege that Defendants had extensive contacts with New York. Specifically, Plaintiff asks the Court to take judicial notice of the fact that Defendants: (1) had an executive who resided in and conducted business within New York until at least early 2018, (2) had active accounts with New York banks until at least October 2018, (3) engaged New York firms to assist with business objectives, and (4) knew that traders were using Bitfinex from New York through May 2019. *See* Dkt. 23, at 12–13. Plaintiff does not seek to establish the existence of such filings but, rather, seeks to establish the truth of statements contained within them. Thus, the Court denies Plaintiff's request. *See Weisshaus v. Port Auth. of New York & New Jersey*, 814 F. App'x 643, 647 (2d Cir. 2020) (reversing district court's grant of Rule 12(b)(6) motion based on judicial notice of factual findings from another lawsuit); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."); *Beede v. Stiefel Lab'ys, Inc.*, No. 1:13-CV-120 MAD/RFT, 2014 WL 896725, at *5 (N.D.N.Y. Mar. 6, 2014) ("[T]he Court finds that there is no basis for the Court to consider the factual affidavits [filed in connection with other lawsuits] for the truth of the allegations contained therein."); *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, No. 21-CV-9336 (LJL), 2022 WL 4815615, at *25 (S.D.N.Y. Sept. 30, 2022); *Noble Foods Inc. v. Woodland Partners, Inc.*, No. CV 19-10324, 2019 WL 2918044, at *2 (D. Mass. July 8, 2019) ("[A]lthough the filing of the affidavit is susceptible to judicial notice, the statements contained therein (which [Plaintiff] asks the Court to take as fact) are not."); *Townes v. Paule*, 407 F. Supp. 2d 1210, 1217 n.5 (S.D. Cal. 2005) ("Facts in the judicial record that are subject to dispute, such as allegations in affidavits and declarations . . . are not the proper subjects of judicial notice even though they are in a court record.") (citation omitted).

Atwal never had an account on Bitfinex, Atwal's claims arise out of those transactions because his "claims do not relate to his use of a Bitfinex account." *Id.* Regarding C.P.L.R. 302(a)(3)(ii), Plaintiff contends that he suffered an injury within New York and points to his "continuous residence in New York at the time." Dkt. 23, at 20.

## III.   THE R&R

Judge Foschio issued a comprehensive R&R recommending, among other things, denial of Defendants' motion to dismiss for lack of personal jurisdiction. Dkt. 27, at 18.  Specifically, Judge Foschio concluded the Court lacked general jurisdiction over Defendants, but possessed specific jurisdiction. *Id.* at 12, 16–18.

On the issue of specific jurisdiction, Judge Foschio concluded that Plaintiff made a prima facie showing of personal jurisdiction under both C.P.L.R. 302(a)(1) and 302(a)(3)(ii).  As to C.P.L.R. 302(a)(1), "[w]ithout deciding whether Plaintiff's use of the Bitfinex website to trade in EOS cryptocurrency constituted a business transaction or a mere communication," Judge Foschio concluded that Plaintiff's allegations—"that after being advised by Plaintiff of . . . unauthorized transfers of EOS from Plaintiff's Account to other accounts on the Bitfinex platform, Defendants failed to ensure that no further transactions of the Plaintiff's EOS currency occurred"—"allege more than a mere communication."  Dkt. 27, at 15.  In reaching this conclusion, Judge Foschio stated that "Plaintiff's purchasing and maintaining his EOS in an account on the Bitfinex platform" called into question Defendants'

contention that Bitfinex specifically prohibited New York residents from trading. *Id.* at 15–16.

Defendants objected to Judge Foschio's conclusion that the Court possesses specific jurisdiction over Defendants pursuant to C.P.L.R. 302(a)(1) and 302(a)(3)(ii). Dkt. 30, at 6. Defendants contend that Judge Foschio's conclusions relied on an incorrect fact—namely, that Plaintiff operated an account on the Bitfinex platform to hold or trade cryptocurrency. *Id.* Defendants further argue Judge Foschio erred in concluding that Plaintiff suffered injury in New York under C.P.L.R. 302(a)(3)(ii) because suffering financial loss in New York—merely the result of his domicile—is insufficient to confer jurisdiction. *Id.* at 19–21.

In response, Atwal argues the Bitfinex website is "more than sufficiently interactive to confer jurisdiction over Defendants" because "it allowed visitors . . . to communicate with a Bitfinex representative, email questions, and receive responses from Bitfinex representatives." Dkt. 31, at 11. Thus, according to Atwal, "Defendants purposefully availed themselves of the benefits of New York—and thus transacted business in New York—through the Bitfinex website available in New York and knowingly permitting New York customers to trade on Bitfinex." *Id.* at 16. Atwal confirmed that he was never a customer of Bitfinex, nor did he trade EOS on Bitfinex. *Id.* at 16–17. However, he contends that Judge Foschio did not rely on such facts in reaching his conclusion. *Id.*

Defendants argue that the R&R's conclusion relied exclusively on these alleged "erroneous facts." Dkt. 35, at 5. And without such facts, Defendants

contend that Atwal failed to allege a business transaction as required by C.P.L.R. 302(a)(1). *Id.* at 6–9. To the extent the R&R relied on Atwal's email to a Bitfinex representative and their responses, mere communications are insufficient to qualify as a business transaction. *Id.* at 7. Moreover, according to Defendants, the Bitfinex website is insufficiently interactive because it is not geared toward commercial activity. *Id.* at 8.

## DISCUSSION

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully reviewed the thorough R&R, the record in this case, the objections and responses, and the underlying briefing submitted by the parties. Based on that *de novo* review, the Court disagrees with and declines to adopt Judge Foschio's recommendation to deny Defendants' motion to dismiss for lack of personal jurisdiction. Because Atwal's allegations are inadequate to establish a prima facie showing of personal jurisdiction over Defendants, the motion to dismiss is granted.

## I.   LEGAL STANDARD

A plaintiff bears the burden of demonstrating personal jurisdiction over the persons or entities against whom he seeks to bring suit. *Penguin Grp. (USA), Inc. v.*

*Am. Buddha,* 609 F.3d 30, 34 (2d Cir. 2010); *Whitaker v. Am. Telecasting, Inc.,* 261

F.3d 196, 208 (2d Cir. 2001). Courts may consider materials "outside the pleadings

on a motion to dismiss for lack of personal jurisdiction without converting it into a

summary judgment motion." *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir.

2019). Where, as here, the court "relies on the pleadings and affidavits, and chooses

not to conduct a 'full-blown evidentiary hearing,' plaintiffs need only make a prima

facie showing of personal jurisdiction over the defendant." *Porina v. Marward

Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). Such a showing entails "making

legally sufficient allegations of jurisdiction, including an averment of facts that, if

credited, would suffice to establish jurisdiction over the defendant." *Penguin,* 609

F.3d at 35 (internal quotation marks, citation, and alteration omitted).

When considering a Rule 12(b)(2) motion, courts must "construe the

pleadings and affidavits in the light most favorable to the plaintiff, resolving all

doubts in [his] favor." *Porina*, 521 F.3d at 126. The allegations in the complaint

"must be taken as true to the extent they are uncontroverted by the defendant's

affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation

omitted). But "argumentative inferences favorable to the party asserting

jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,

968 F.2d 196, 198 (2d Cir. 1992).

Personal jurisdiction over a defendant in a diversity action "is determined by

the law of the forum in which the court sits." *CutCo Indus., Inc. v. Naughton*, 806

F.2d 361, 365 (2d Cir. 1986). Courts in New York follow a two-step process to

determine the existence of personal jurisdiction.  First, the court assesses whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  If the long-arm statute permits personal jurisdiction, "the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

A New York court may exercise personal jurisdiction over a non-resident defendant either via general jurisdiction under C.P.L.R. 301 or via specific jurisdiction under C.P.L.R. 302.  General jurisdiction "permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  Specific jurisdiction is available "when the cause of action sued upon arises out of the defendant's activities in a state." *Id.*

## II. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

The issue here is whether this Court possesses personal jurisdiction over Defendants pursuant to New York's long-arm statute—namely, C.P.L.R. 302(a)(1) or 302(a)(3)(ii).[3]  Because Plaintiff failed to make a prima facie showing of personal jurisdiction under either section, Defendants' motion is granted in full.

---

[3] The Court agrees with Judge Foschio's general jurisdiction analysis. *See* Dkt. 27, at 10–12. And Plaintiff did not object to Judge Foschio's conclusion that the Court lacks general jurisdiction over Defendants. *See* Dkt. 31.

**A.   C.P.L.R. 302(a)(1)**

Under C.P.L.R. 302(a)(1), "a nondomiciliary defendant is subject to personal jurisdiction if he transacts business in New York and the claims against him arise out of that business activity." *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012). The overriding criterion "necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Id.* (quoting *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007)). A non-domiciliary defendant transacts business in New York "when on his or her own initiative, the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business." *Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, 738 F. App'x 25, 26 (2d Cir. 2018) (citation omitted); *see Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007) ("New York courts define transacting business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (internal quotations marks, citation, and alteration omitted).

Purposeful availment occurs "when the non-domiciliary, through volitional acts, seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (internal quotation marks and citations omitted). At a minimum, the defendant "must, on his or her own initiative . . . project himself

12

or herself into the state to engage in a sustained and substantial transaction of business." *Id.* (internal quotation marks, citation, and alterations omitted). Although it is impossible "to precisely fix those acts that constitute a transaction of business . . . it is the quality of the defendants' New York contacts that is the primary consideration." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012).

If the first prong of the test for jurisdiction under C.P.L.R. 302(a)(1) is satisfied, the court must then inquire whether the plaintiff's claims arise from that transaction. *Id.* at 66. A suit will be deemed to have arisen out of a party's activities in New York "when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted).

## 1. Transacting Business

Atwal asserts his use of the Bitfinex website from New York to communicate with Defendants rises to the level of transacting business under C.P.L.R. 302(a)(1). Dkt. 23, at 17–19; Dkt. 31, at 16–18.[4] While Bitfinex prohibited residents of New York from creating an account or trading on its platform, New Yorkers could use the

---

[4] Atwal also contends that jurisdiction is especially appropriate considering Defendants' other extensive New York activities. Dkt. 23, at 18. As discussed below, even if this Court could properly consider Plaintiff's submissions of other court filings, Atwal's claims do not have the requisite nexus to those alleged New York contacts.

website to communicate with a Bitfinex representative and receive responses. Dkt.
1, at 5 ¶ 33; Dkt. 16, at 2 ¶ 10. Here, Atwal accessed the Bitfinex website from New
York to submit a support ticket regarding his stolen EOS and a Bitfinex
representative sent him two emails in response. Dkt. 25, at 1 ¶¶ 4–6. Thus,
because the Bitfinex website was not merely a passive website containing
information, Plaintiff contends it rises to the level of transacting business under
C.P.L.R. 302(a)(1). Dkt. 31, at 16.

 In determining whether a defendant's website is sufficient to confer
jurisdiction, many courts in this Circuit have utilized the "sliding scale" of
interactivity framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.
Supp. 1119 (W.D. Pa. 1997). *See Best Van Lines* 490 F.3d at 251–52.

> In *Zippo*, the court identified three categories that a website may fall under:
>
> At one end of the spectrum are situations where a defendant clearly does
> business over the Internet. If the defendant enters into contracts with
> residents of a foreign jurisdiction that involve the knowing and repeated
> transmission of computer files over the Internet, personal jurisdiction is
> proper. At the opposite end are situations where a defendant has simply
> posted information on an Internet Web site which is accessible to users
> in foreign jurisdictions. A passive Web site that does little more than
> make information available to those who are interested in it is not
> grounds for the exercise [of] personal jurisdiction. The middle ground is
> occupied by interactive Web sites where a user can exchange
> information with the host computer. In these cases, the exercise of
> jurisdiction is determined by examining the level of interactivity and
> commercial nature of the exchange of information that occurs on the
> Web site.

952 F. Supp. at 1124 (citations omitted).

 The guiding principle emerging from the case law is that the question
whether the "exercise of personal jurisdiction is permissible is 'directly

14

proportionate to the nature and quality of commercial activity that an entity conducts over the internet.'" *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (citation omitted).

Applying those standards here, Defendants' website in relation to its accessibility in New York falls into the "middle ground" because it is an "interactive Web site[] where a user can exchange information with the host computer." *See Zippo*, 952 F. Supp. at 1124; *Citigroup*, 97 F. Supp. 2d at 565 ("[O]ccupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction."). Thus, the Court looks to "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, 952 F. Supp. at 1124.

Relying on *Citigroup*, Plaintiff argues that the Bitfinex website is sufficiently interactive to confer jurisdiction. Dkt. 23, at 18–19; Dkt. 31, at 15–18. In *Citigroup*, the court determined that the defendant's website fell into the middle ground because it allowed customers in New York to apply for loans, print out applications, chat online with a representative, email questions, and receive responses.[5] 97 F. Supp. 2d at 565–66. Examining the "level and nature of exchange

---

[5] The court noted that "it [was] not clear that the transaction [could] actually be consummated online, a scenario which [would] bring this case out of the middle category and into the category of a business that clearly does business over the internet in New York." *Citigroup*, 97 F. Supp. 2d at 566 n.8.

on the website," the court concluded "the interaction is both significant and *unqualifiedly commercial in nature* and thus rises to the level of transacting business under CPLR § 302(a)(1)." *Id.* at 565 (emphasis added).

The critical difference here is that the interaction alleged by Atwal— submitting a support ticket and communicating with a representative—is not "unqualifiedly commercial in nature," like a loan application would be. *See id.* Creating a website, "like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997).[6]

---

[6] According to Atwal, "jurisdiction is based on [his] interactions and transactions with Defendants through the Bitfinex website . . . and not simply the presence of the website on the internet." Dkt. 31, at 18. While "[n]on-commercial activity may qualify as the transaction of business under § 302(a)(1) . . . a nondomiciliary 'transacts business' in New York under § 302(a)(1) only when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of the state's laws." *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219–20 (2d Cir. 2004). "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983); *see Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012) ("Generally, telephone and mail contacts do not provide a basis for jurisdiction under CPLR § 302(a)(1) . . . .") (internal quotation marks and citation omitted). Therefore, Atwal's communications with a Bitfinex representative fail to demonstrate that Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within New York, thus invoking the benefits and protections of the state's laws." *See Girl Scouts of U.S.*, 102 F. App'x at 219–20; *Pincione*, 506 F. App'x at 25 ("The defendants' alleged New York conduct or contacts consisted principally of correspondence, telephone calls, and participation in telephone and video conferences. Nothing in the pleadings suggests that these communications, while numerous, were made with the intent to project the defendants into New York and avail themselves of its laws.").

Even the existence of "an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006); *see A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569 (E.D.N.Y. 2011) ("The existence of a website that can be accessed by New York residents is particularly insufficient to justify the exercise of personal jurisdiction where there is absolutely no degree of commercial activity that actually occurred."); *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21 CIV. 891 (PAE), 2021 WL 3115437, at *7 (S.D.N.Y. July 22, 2021) ("[C]ourts in this Circuit have exercised personal jurisdiction where the Defendant runs a semi-interactive site accessible to New Yorkers *and* Defendant sells or sold services in the state.").  In other words, the ability of New York residents to access the Bitfinex website and communicate with an online representative is not sufficient when, as here, New York residents are specifically prohibited from engaging in commercial transactions on the Bitfinex website. *See Blockchange Ventures*, 2021 WL 3115437, at *7 ("[T]he mere operation of a semi-interactive website, without sales into New York, has generally not supported personal jurisdiction under CPLR § 302(a)(1)."); *A.W.L.I. Grp.*, 828 F. Supp. 2d at 569 ("[A] website is . . . insufficient to confer jurisdiction where, as here, the only purported 'exchange of information' available on the website is a direct link

allowing a user to contact the seller and does not allow for any part of a transaction to occur online.").[7]

Construing the allegations in the light most favorable to Atwal, this Court cannot conclude that Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 252 (internal quotation marks and citation omitted). Defendants operate a website that can be accessed by residents of New York to submit a support ticket and communicate with a representative—which Atwal did here. But Bitfinex expressly prohibits New York residents from engaging in commercial transactions on its platform. Atwal does not allege that Defendants targeted or directed their activities toward New York in any way. Rather, Atwal initiated contact with Defendants from New York and, as a result, a Bitfinex representative sent him two emails. "[P]urposeful availment occurs when the non-domiciliary *'seeks out and initiates* contact with New York, *solicits business* in New York, and *establishes a continuing relationship.'"* *Pindell v.*

---

[7] As the Second Circuit has noted, "a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York—that is, whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines*, 490 F.3d at 252 (citation omitted). Thus, "a court need not embark on a *Zippo*-like interactivity analysis if it can understand the basis for personal jurisdiction through traditional statutory and constitutional principles alone." *48th Rest. Assocs. LLC v. Avra Hosp. LLC*, No. 19-CV-7708 (VSB), 2022 WL 203592, at *4 (S.D.N.Y. Jan. 24, 2022).

*N'Namdi*, No. 20CV818PGGKNF, 2021 WL 9036271, at *13 (S.D.N.Y. June 8, 2021) (emphasis added) (quoting *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014)).

Here, Plaintiff has not adequately alleged that Defendants sought out and initiated contact with, solicited business in, or established a continuing relationship with New York during the relevant time period. Defendants did not purposefully avail themselves of the privilege of conducting business in New York simply because a New York resident submitted a support ticket on their website and briefly communicated with a representative—not in relation to using its services or purchasing its products, but to request help with stolen cryptocurrency that a third party transferred into accounts on Bitfinex. *See Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, 2011 WL 381612, at *8 (E.D.N.Y. Feb. 2, 2011) (concluding defendants did not transact business in New York where website provided contact information for defendants' out-of-state sales representatives, but New York customers could not purchase advertised goods through defendants' website); *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."). For these reasons, Plaintiff has not made a prima facie showing of personal jurisdiction under C.P.L.R. 302(a)(1).

## 2. **Articulable Nexus**

Even if the Court considered Plaintiff's submission of court filings from other litigation—and concluded that such allegations rose to the level of transacting

19

business—the result would remain the same.  Atwal's claims do not have the necessary nexus to those alleged contacts with New York from other cases.  New York courts have held that "a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'"  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted).  "Although 'the inquiry under the statute is relatively permissive,' and 'causation is not required,' not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction."  *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130 (2d Cir. 2022) (citation omitted).  A connection "that is 'merely coincidental' is insufficient to support jurisdiction."  *Sole Resort*, 450 F.3d at 103 (citation omitted).

Atwal contradicts Defendants' assertion that Bitfinex has prohibited New York residents from engaging in commercial transactions on its platform since 2018, and seeks to use these other court filings to demonstrate that Defendants transacted business over the Bitfinex website in New York.  *See* Dkt. 31, at 16–18.  But Atwal's claim here must arise from *those earlier transactions.  See Camacho v. Vanderbilt Univ.*, No. 18 CIV. 10694 (KPF), 2019 WL 6528974, at *5 (S.D.N.Y. Dec. 4, 2019) ("[I]t is not enough for the Website to transact business within the state— the claims at issue must arise from the Website's transactions of business.").  Atwal's claims do not arise from his use of the Bitfinex exchange, or from any commercial transaction with Defendants.  *See* Dkt. 31, at 19 ("Atwal's claims are

based on his interactions with Defendants in New York, not whether he was a Bitfinex customer."). Instead, Atwal's claims arise from Defendants' alleged actions in failing to freeze and return the EOS to Atwal. Thus, Atwal's claims do not arise from such alleged earlier business transactions conducted with New York residents via the Bitfinex website. *See American Radio Association, AFL–CIO v. A.S. Abell Co.*, 58 Misc. 2d 483, 485 (Sup. Ct. N.Y. 1968) ("[N]ot one [of the alleged contacts] may be relied upon to uphold jurisdiction under the long-arm statute since the cause of action alleged in the complaint does not, as is required by statute, arise from any of the acts enumerated."). In sum, there is no personal jurisdiction under C.P.L.R. 302(a)(1).

### B.   C.P.L.R. 302(a)(3)(ii)

Under C.P.L.R. 302(a)(3)(ii), a court in New York "may exercise jurisdiction over a non-domiciliary when the defendant (1) committed a tortious act outside New York that causes injury within New York, (2) expects or should reasonably expect the act to have consequences in the state, and (3) derives substantial revenue from interstate or international commerce." *Glenn H. Curtiss Museum of Loc. Hist. v. Confederate Motors, Inc.*, No. 20-CV-6237 (CJS), 2021 WL 514229, at *3 (W.D.N.Y. Feb. 11, 2021). Each element is essential, and "if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision." *Bonilla v. Nelson & Kennard*, No. 19CV05067DLIRER, 2020 WL 5763774, at *3 (E.D.N.Y. Sept. 28, 2020). Here, jurisdiction is lacking under

C.P.L.R. 302(a)(3)(ii) because Atwal failed to allege any New York-based harm as a result of Defendants' conduct.

To determine whether a tortious act caused an injury in New York for the purposes of C.P.L.R. 302(a)(3)(ii), the court must determine the situs of the injury. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). The situs of the injury "is the location of the original event [that] caused the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal citation and quotation marks omitted); *see JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 744 (2d Cir. 2020) ("[T]he sit[us] of a commercial injury is not where the economic loss is felt, but where the critical events associated with the dispute took place.").

In this case, the situs of the injury is outside New York. It is well-settled that "'residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)). Thus, "the suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38 (2d Cir. 2010); *see Whitaker*, 261 F.3d at 209 ("The occurrence of financial consequences in New York due to the fortuitous location of

plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.").

Atwal alleges several torts—including conversion, trespass to chattels, and negligence. Dkt. 1. The question is whether his alleged financial loss in New York—merely the result of his New York domicile—is sufficient to constitute an injury in New York under C.P.L.R. 302(a)(3)(ii).

Atwal points to his "continuous residence in New York at the time." Dkt. 23, at 20. Atwal does not allege that he suffered an injury in New York other than financial loss. Instead, he contends the financial loss he suffered in New York is sufficient to satisfy the situs-of-the-injury prong of C.P.L.R. 302(a)(3)(ii). Dkt. 31, at 20. Alternatively, Atwal argues that the situs of the injury was New York because "Atwal was located in New York when he received misrepresentations from Defendants—*i.e.*, that Defendants would freeze his stolen EOS in Bitfinex accounts." *Id.* at 21. This is insufficient under the caselaw.

Atwal's reliance on cases involving fraud and misrepresentations is misplaced.[8] *See Miller Inv. Tr. v. Xiangchi Chen*, 967 F. Supp. 2d 686, 696

---

[8] Most of the cases he cites involve fraudulent misrepresentations—but "the injury rule is modified in fraud cases." *Aboutaam v. El Assaad*, No. 1:18-CV-8995 (ALC), 2020 WL 1547458, at *10 (S.D.N.Y. Mar. 31, 2020). In such cases, to determine the "original event" that caused the injury, "the critical question is . . . where the first effect of the tort was located that ultimately produced the final economic injury." *Bank Brussels Lambert*, 171 F.3d at 792. "[F]or purposes of fraud and breach of fiduciary duty claims, the 'original event that caused the injury' is the actual 'disbursement of funds' or 'loss of money' that resulted from plaintiff's reliance on defendant's alleged misrepresentations." *Weintraub v. Empress Travel Trevose, Two-L's Ltd.*, No. 17 CIV. 00552 (PGG), 2018 WL 4278336, at *11 (S.D.N.Y. Mar. 6, 2018); *see Bank Brussels Lambert*, 171 F.3d at 792 ("[T]he disbursement of funds in

(S.D.N.Y. 2013) ("[A] number of cases in the Second Circuit . . . hold that the original event leading to the injury in a misrepresentation action is the plaintiff's reliance on the misrepresentations."). Atwal does not allege any torts based on misrepresentations. *See generally* Dkt. 1. More importantly, Atwal fails to allege that his reliance on such misrepresentations caused his financial injury.

---

this case was thus the first effect of the tort that caused the injury—or, alternatively stated, the 'original event that caused the injury.'"); *Pincione v. D'Alfonso*, 506 F. App'x 22, 26 (2d Cir. 2012) ("[Plaintiff] satisfied the 'location' element of § 302(a)(3)(ii) to the extent he alleged that the fraudulent January 2007 balance sheet he received in New York 'induced him to make his initial financial investment . . . .'"); *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (holding that the original event causing injury was in New York where the plaintiff relied on the California defendant's alleged misrepresentations, made in California, and purchased grape vines that were shipped to the plaintiff in New York); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016) (situs of injury was in New York because defendants made misrepresentations in letters sent to New York, causing plaintiff to wire money, which subsequently resulted in a financial loss in New York); *Pariente v. Scott Meredith Literary Agency, Inc.*, No. 90 CIV. 0547 (PKL), 1991 WL 19857, *3 (S.D.N.Y. Feb. 11, 1991) (concluding that the plaintiff suffered injury within New York when he received and relied upon the defendant's misrepresentations in New York and, in reliance on those misrepresentations, made payments to the defendant from New York). In *Baskett v. Autonomous Rsch. LLP*, which the R&R relied on in concluding that the situs of the injury was New York, the plaintiff asserted employment discrimination and retaliation claims against her employer based in the United Kingdom. No. 17-CV-9237 (VSB), 2018 WL 4757962, at *1 (S.D.N.Y. Sept. 28, 2018). The Court concluded that the situs of the injury was New York because the plaintiff was located, and suffered financial loss, there. *Id.* at 10. But Atwal's claims do not arise from an employment relationship and, therefore, this analysis is not applicable here. *See Litton v. Avomex Inc.*, No. 08-CV-1340 (NAM/DRH), 2010 WL 160121, at *6 (N.D.N.Y. Jan. 14, 2010) ("When a person is employed in New York (or performs a substantial part of the duties of his employment in New York), his experience of being removed from that employment (or from those duties) is a New York event that constitutes 'the first effect of the tort' of discharging the employee.") (citation omitted).

In his response (Dkt. 31), Atwal claims—for the first time— that "in reliance on Defendants' representations that they had frozen accounts, Dr. Atwal refrained from taking certain action to restrain or recover the EOS, and instead 'diligently pursued law enforcement assistance,' as instructed by Defendants." Dkt. 31, at 26. Atwal does not identify any actions he refrained from taking, nor does the complaint contain such allegations.[9]  Thus, even if the Court construed Atwal's complaint as a misrepresentation action—and relied upon that line of cases—the conclusion would be the same.  Atwal failed to demonstrate how "the first effect of the tort . . . that ultimately produced the final economic injury" occurred in New York. *Bank Brussels Lambert*, 171 F.3d at 792.  Reading the complaint in the light most favorable to Atwal, Atwal fails to allege that his reliance on Defendants' communications *caused his financial injury*.  Thus, Plaintiff's attempt to reframe his complaint as a misrepresentation action lacks merit.

Atwal's negligence claim asserts that Defendants breached their duty to freeze the EOS held in Bitfinex accounts and return it to Atwal. Dkt. 1, at 10 ¶¶ 69–70.  Plaintiff's theory is based upon Defendants' failure to "timely respond to or take appropriate measures in response to the FBI's requests to freeze" the Bitfinex

---

[9] The only allegations concerning misrepresentations or omissions in the complaint are that "Defendants did not identify what EOS had been frozen or when the purported freeze of the EOS would expire," Dkt. 1, at 6 ¶ 35, "contrary to Defendants' representation, Defendants failed to freeze or maintain a freeze of Dr. Atwal's EOS even after Dr. Atwal engaged law enforcement," *id.* at 9 ¶ 63, and that Defendants had "a duty to freeze the EOS pursuant to the EOS constitution and after Defendants agreed and represented to Dr. Atwal and the FBI that the EOS could and would be frozen." Dkt. 1, at 10 ¶ 69.

accounts holding the EOS—thus allowing the EOS to be transferred out of those accounts. Dkt. 1, at 6 ¶ 38. According to Atwal, Defendants' failure to take appropriate action was "due to Bitfinex's internal staffing issues and/or its failure to comply with its internal policies or procedures." *Id.* Atwal does not dispute that Defendants' operations are located outside of New York. *See* Dkt. 1, at 1 ¶¶ 2–4; Dkt. 16, at 1–2 ¶¶ 3–7. Relevant to his claims, the only allegations connecting Defendants to New York are that a Bitfinex representative sent two emails to Atwal—who was located in New York.

Again, in the context of commercial torts, "where the damages are purely economic, 'the situs of the injury is the location where the event giving rise to the injury occurred, and not where the resultant damages occurred.'" *Bartosiewicz v. Nelsen*, 564 F. Supp. 3d 287, 297 (W.D.N.Y. 2021) (citation omitted). Thus, the Court must look to "where the critical events associated with the dispute took place," and "not where the economic loss [was] felt." *JCorps Int'l.*, 828 F. App'x at 744.[10] As discussed above, Atwal does not contest that Defendants' operations are located outside the United States. And Defendants' alleged negligence must have

---

[10] Atwal argues that the "critical events" analysis does not apply. *See* Dkt. 31, at 15 n.6. The Court disagrees. *See Stein Fibers, Ltd. v. Bondex Telas Sin Tejar*, No. 1:08CV210LEK/DRH, 2009 WL 385412, at *5 (N.D.N.Y. Feb. 10, 2009) (applying "critical events" analysis to conversion claim); *Zaveri v. Condor Petroleum Corp.*, No. 08-CV-6554T, 2009 WL 2461092, at *4 (W.D.N.Y. Aug. 10, 2009) (same); *Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 CIV.7778 (DLC), 2004 WL 1328215, at *5 (S.D.N.Y. June 15, 2004) (same); *Mije Assocs. v. Halliburton Servs.*, 552 F. Supp. 418, 420 (S.D.N.Y. 1982) (applying "critical events" analysis to negligence claim resulting in monetary damage). In any event, the Court reaches the same conclusion applying the traditional "original event" analysis.

occurred outside New York for jurisdiction to be proper under C.P.L.R. 302(a)(3)(ii). Thus, the "event giving rise to the injury" was Bitfinex's internal staffing issues and/or its failure to comply with internal procedures because, according to Atwal's allegations, one or both of those issues caused Defendants' negligence. And they occurred elsewhere. *See Am. Med. Distributors, Inc. v. Saturna Grp. Chartered Accts.*, LLP, No. 15CV6532ADSGRB, 2016 WL 3920224, at *10 (E.D.N.Y. July 15, 2016) (holding the situs of the injury was outside New York when "it [was] clear that the original event which caused the injury—namely, the [defendant's] provision of allegedly negligent accounting and auditing services to [the plaintiff]—occurred outside of New York" and "the only discernible consequence that these actions had in New York came later, in the form of purely commercial injury to [the plaintiff]"); *Tan v. SMS Inv. Grp.*, LLC, No. 15-CV-3719(ADS)(ARL), 2016 WL 1171605, at *13 (E.D.N.Y. Mar. 24, 2016) (concluding that—where the defendants refused to honor the plaintiff's request for a partial refund—the original event which caused his injury arose from the defendant's failure to pay the plaintiff and its alleged failure to establish sufficient reserves to cover the refund—which took place where the defendants' office and principal place of business was located).

Moreover, the critical events giving rise to the dispute must have occurred outside New York, where Defendants' operations are located—and where any management decisions or operational failures occurred. *See Peters v. Peters*, 101 A.D.3d 403, 404 (1st Dept. 2012) ("[T]he allegedly wrongful disbursement of approximately $20 million was not an injury-causing event in New York, but,

rather, a decision by a trustee in the Bahamas to authorize the release of funds from bank accounts in Switzerland."). In sum, New York was not the situs of Atwal's injury. *See Zito v. United Airlines, Inc.*, 523 F. Supp. 3d 377, 387 (W.D.N.Y. 2021) ("C.P.L.R. § 302(a)(3) . . . does not extend to injuries that occur outside of New York but merely manifest themselves in New York."); *McBride v. KPMG Int'l*, 135 A.D.3d 576, 577 (2016) ("While plaintiffs allege that [the defendant] [performed the negligent auditing services] outside the state    . . . and their causes of action arise out of that tort, [the defendants'] act did not cause injury to a person or property within the state."); *Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 454, 460 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. 2005) (where plaintiff alleged the defendant bank willfully or negligently cashed the plaintiff's check on a different account, the situs of the injury was where the check was deposited, not where plaintiff attempted to cash the check); *Mije Assocs. v. Halliburton Servs.*, 552 F. Supp. 418, 420 (S.D.N.Y. 1982) ("We know of no decision suggesting that the requirement of 'injury to person or property within the state' could be satisfied by a negligence committed wholly outside the state which causes monetary damage to a New York citizen.").

Applying the situs-of-the-injury test to Plaintiff's conversion claim commands the same result.[11] Atwal alleges that Defendants unlawfully exercised control over the EOS after he and the FBI notified them that Atwal had not authorized transfers

---

[11] This analysis also applies to Atwal's trespass to chattels claim because "[a] claim for trespass to chattels overlaps with a claim for conversion." *See DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 283 (S.D.N.Y. 2014).

from the EOS account. Dkt. 1, at 7 ¶ 43. Generally, "in a conversion case, the tort and the injury will occur in the same location—where the conversion actually occurred." *Popper v. Podhragy*, 48 F. Supp. 2d 268, 274 (S.D.N.Y. 1998); *see Stein Fibers, Ltd. v. Bondex Telas Sin Tejar*, No. 1:08CV210LEK/DRH, 2009 WL 385412, at *5 (N.D.N.Y. Feb. 10, 2009) ("In regards to the tort of conversion, the injury to the plaintiff is deemed to occur where the defendant's conversion of the property actually occurred, not where the plaintiff is located.").

Plaintiff does not allege that Defendants' conversion occurred in New York. Rather, he alleges that the conversion occurred outside New York—as required by C.P.L.R. 302(a)(3)(ii). Thus, Defendants' alleged conversion of Atwal's EOS could not have taken place in New York. *See Paraco Gas Corp. v. Ion Bank*, No. 20 CV 4971 (VB), 2021 WL 2810062, at *6 (S.D.N.Y. July 6, 2021) (where the plaintiff alleged the defendant bank fraudulently seized the New York corporation's funds, the situs of the injury was not New York because "there [was] no allegation that . . . [the] [d]efendant's alleged seizing of the funds took place anywhere other than in Connecticut"); *Landau v. New Horizon Partners, Inc.*, No. 02 Civ. 6802 (JGK), 2003 WL 22097989, at *7 (S.D.N.Y. Sept. 8, 2003) ("Any alleged conversion of funds or unjust enrichment took place in Sweden, and not in New York, because the funds were located in Sweden.").

Thus, because the alleged conversion of Atwal's EOS did not occur in New York, New York was not the situs of his injury. *See Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019) (court lacked jurisdiction

pursuant to C.P.L.R. 302(a)(3) where "the alleged fraud and conversion took place in Canada and . . . the only injury suffered in New York was their financial loss"); *MEE Direct, LLC v. Tran Source Logistics, Inc.*, No. 12 CIV. 6916 SAS, 2012 WL 6700067, at *5 (S.D.N.Y. Dec. 26, 2012) ("[T]he original event which caused the injury, i.e. the situs of injury, was the conversion."); *Villanova v. Harbilas*, No. 08 Civ. 10448 (PKC) (RL), 2010 WL 1640187, at *5 (S.D.N.Y. Apr. 13, 2010) (situs of injury for fraud, conversion, and breach of fiduciary duty claims was in Pennsylvania where plaintiff's bank account was located, and where any improper management of plaintiff's money occurred); *Zaveri v. Condor Petroleum Corp.*, No. 08-CV-6554T, 2009 WL 2461092, at *4 (W.D.N.Y. Aug. 10, 2009) ("Because . . . the alleged conversion occurred [outside New York], the resulting injury, as a matter of law occurred there as well, and plaintiffs have failed to establish personal jurisdiction pursuant to [C.P.L.R. 302(a)(3)(ii)].").[12]

---

[12] Some courts in the Second Circuit have held that an unjust enrichment claim cannot provide a basis for jurisdiction under C.P.L.R. 302(a)(3)(ii). *See Anscombe Broad. Grp., Ltd. v. RJM Commc'ns, Inc.*, No. 03-CV-0306A(F), 2004 WL 2491641, at *6 (W.D.N.Y. Nov. 3, 2004) ("[U]njust enrichment[] is a quasi-contract claim . . ." and therefore "cannot provide a basis for long-arm jurisdiction under [C.P.L.R. 302(a)(3)].") (internal citations omitted); *Madison Cap. Markets, LLC v. Starneth Eur. B.V.*, No. 15 CIV. 7213, 2016 WL 4484251, at *5 (S.D.N.Y. Aug. 23, 2016). The Court need not decide this issue. Even if Plaintiff's unjust enrichment claim may provide a basis for establishing jurisdiction, the situs of the injury is also outside New York. *See Landau*, 2003 WL 22097989, at *7 ("[T]he conversion and unjust enrichment took place in Sweden, and therefore, the fact that the plaintiff suffered financial consequences in New York is not a sufficient basis to exercise jurisdiction . . . under § 302(a)(3)."); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 407 (S.D.N.Y. 2021) ("With respect to Plaintiffs' unjust enrichment claim, the situs of the injury is either where 'the bank accounts holding the funds of the plaintiff were located and controlled' or where the Scott Group Defendants managed those accounts.") (citation omitted).

That Atwal resided in New York when Defendants' alleged conduct—occurring outside New York—caused his financial loss is insufficient to confer jurisdiction. *See, e.g., Timothy Coffey*, 760 F. App'x at 61; *Troma Ent.*, 729 F.3d at 218; *Penguin Grp.*, 609 F.3d at 38; *Whitaker*, 261 F.3d at 209. Therefore, the situs of the injury is outside New York, and C.P.L.R. 302(a)(3)(ii) does not afford a basis for personal jurisdiction.[13]

## III.   JURISDICTIONAL DISCOVERY

Plaintiff also requests the opportunity to engage in jurisdictional discovery. Dkt. 31, at 18 n.8. Where a plaintiff has "failed to state a *prima facie* case for personal jurisdiction, the Second Circuit has held it is not entitled to jurisdictional discovery." *Rates Tech. Inc. v. Cequel Commc'ns, LLC*, 15 F. Supp. 3d 409, 420–21

---

[13] Because personal jurisdiction is impermissible under New York's long-arm statute, the Court need not reach the question of its constitutionality. *See Best Van Lines*, 490 F.3d at 244. Even if, however, Plaintiff made a prima facie showing of personal jurisdiction under C.P.L.R. 302(a)(1) or 302(a)(3)(ii), jurisdiction would be constitutionally impermissible. A fundamental component of this constitutional analysis is to "determine whether [the] defendant has sufficient minimum contacts with the forum." *JCorps Int'l*, 828 F. App'x at 743 (citation omitted). As the Second Circuit has recognized, the "meaning of 'transact[ing] business' for the purposes of section 302(a)(1)" may "overlap significantly" with the minimum contacts analysis, though "some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute." *Best Van Lines*, 490 F.3d at 247–48. Thus, for the same reasons discussed above, the Court finds Defendants' contacts with New York insufficient under the minimum contacts analysis. Moreover, "[t]he lawsuit 'must arise out of contacts that the defendant *himself* creates with the forum.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Plaintiff's claims do not arise out of contacts that Defendants created with New York—rather, they arise out of Plaintiff initiating contact with Defendants from New York. *See Walden*, 571 U.S. at 285 ("[The] analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there.").

(S.D.N.Y. 2014); *see Best Van Lines*, 490 F.3d at 255 ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since [Plaintiff] did not establish a prima facie case that the district court had jurisdiction over [Defendant], the district court did not err in denying discovery on that issue."). Consequently, "courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction." *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006). Here, Atwal failed to make a prima facie showing of personal jurisdiction. Discovery would not cure these deficiencies. *See A.W.L.I. Grp.*, 828 F. Supp. 2d at 575 ("[J]urisdictional discovery is not permitted where, as here, the defendant submits an affidavit that provides all the necessary facts and answers all the questions regarding jurisdiction."). His request for jurisdictional discovery is denied.

## IV.   LEAVE TO AMEND

In a footnote, Atwal requests permission to file an amended complaint. *See* Dkt. 23, at 30 n.20; Dkt. 31, at 30 n.13. Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). It is well established that "leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). And a

plaintiff "need not be given leave to amend if [he] fails to specify . . . how amendment would cure the pleading deficiencies in [his] complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

In requesting leave to amend, Plaintiff fails to provide any additional facts that he would offer to cure the jurisdictional deficiencies. Thus, his request for leave to amend is denied. *See, e.g., TechnoMarine*, 758 F.3d at 506 (affirming district court's denial of leave to amend because plaintiff "entirely failed to specify how it could cure its pleading deficiencies"); *Trane Int'l Inc. v. Calentadores de Am., S.A. de C.V.*, No. 21CV4497 (DLC), 2022 WL 1523527, at *6 (S.D.N.Y. May 13, 2022) (denying leave to amend because plaintiff failed to "provide[] any proposed amendment or explain[] how its theory could be cured by additional allegations"); *Maurizi v. Callaghan*, No. 20-CV-922-JLS-LGF, 2022 WL 1444182, at *3 (W.D.N.Y. May 5, 2022) ("Nor would [Plaintiff's] footnote be enough to justify further amendment because . . . he has not identified how he would amend."); *Damian v. Click Intel. Ltd.*, No. 20CV11066 (DLC), 2022 WL 428194, at *3 (S.D.N.Y. Feb. 11, 2022) (denying leave to amend because plaintiff "provided no proposed amendments," and "[did not] explain[] how any amendments would help establish personal jurisdiction"); *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 447–48 (W.D.N.Y. 2021) (denying leave to amend because plaintiff sought relief "without attempting at all to explain how her [proposed amendments] would cure any of the pleading deficiencies").

## CONCLUSION

In sum, this Court lacks personal jurisdiction over Defendants because Atwal failed to make a prima facie showing of personal jurisdiction under either C.P.L.R. 302(a)(1) or 302(a)(3)(ii).  For these reasons, Defendants' motion to dismiss for lack of personal jurisdiction (Dkts. 15, 17) is GRANTED.  The Clerk of the Court is directed to close the case.


SO ORDERED.

Dated:      March 22, 2023
            Buffalo, New York


                              _____
                              JOHN L. SINATRA, JR.
                              UNITED STATES DISTRICT JUDGE